UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL CORDY,<br><br>    Plaintiff,<br><br>v.<br><br>USS-POSCO INDUSTRIES, et al.,<br><br>    Defendants. | Case No. 12-cv-00553-JST<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 48 |

In this wage-and-hour proposed class action, Plaintiff Carl Cordy moves for preliminary approval of a proposed settlement. ECF No. 48 ("Motion"). Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court determines that the matter is suitable for disposition without oral argument and hereby VACATES the hearing currently scheduled for August 6, 2013. For the reasons set for below, the motion is DENIED WITHOUT PREJUDICE.

## I.    BACKGROUND

### A.    Cordy's Claims

Plaintiff Carl Cordy is a former employee of Defendant USS-Posco Industries ("Posco") who worked at Posco's Pittsburg, California, steel manufacturing and production facilities. Complaint, ECF No. 1, at ¶¶ 10-12; Amended Answer, ECF No. 19, at ¶ 10. Cordy alleges that Posco had a policy and practice of denying legally required compensation to its hourly production and maintenance ("P&M") employees. Complaint, at ¶¶ 1-6. Specifically, Cordy alleges that Posco denied workers compensation for time spent donning protective order and clocking in before their shifts began, denied employees meal and rest periods, failed to provide itemized wage statements, and failed to timely pay wages upon termination or resignation. Id.

/ / /

**B.      Procedural History**

Cordy brought a proposed class action complaint in against Defendants Posco, United States Steel Corporation, Posco-California Corporation, Pitcal, Inc., and Does 1-50 in February 2012.  Complaint.  He brought causes of action for failure to compensate for all hours worked pursuant to California Labor Code §§ 204 & 1194, for failure to provide meal and rest periods in violation of California Labor Code §§226.7 & 512, for unpaid wages and waiting time penalties pursuant to California Labor Code §§ 201-203, for failure to provide itemized wage statements pursuant to California Labor Code § 226, for violation of California's Unfair Competition Law, California Business & Professional Code § 17200, *et seq.*, and for penalties pursuant to the Private Attorneys General Act, California Labor Code §§ 2699(a) & 2699(f).  Id., at ¶¶ 33-92.

Counsel for Cordy and Posco engaged in formal and informal discovery, exchanging documents related to the claims at issue and deposing twenty individuals, including Cordy, Posco executives, and proposed class members.  Declaration of Carolyn Cottrell ("Cottrell Decl."), at ¶ 8.  On the basis of interviews with proposed class members, time and pay records, and other information from Posco, Cordy's counsel developed a rough estimate of the damages that would result if Cordy were to prevail at trial.  Id., at ¶ 9.  The parties then mediated the dispute before Jeffrey Kravis, after which the parties eventually reached a class-wide settlement subject to the Court's approval.  Id.

Pursuant to a June 2013 Settlement Agreement and Release of Claims, Posco agreed to pay a gross settlement amount of $3,500,000.  Exh. A to Motion, ECF No. 48-1.  In addition to providing settlement awards to the Class Members, the gross settlement award would be used to satisfy: (1) attorney's fees and costs not to exceed $1,155,000 (33% of the gross settlement fund); (2) claims administration fees estimated at $16,342; (3) an enhancement award to Cordy of up to $8,000; (4) a $25,000 payment to the Labor Workforce Development Agency; and (5) a $125,000 "Hold-Back Fund" which would be used to resolve disputed late claims and undisputed expenses, and, if any portion is not distributed within 120 days following the mailing of settlement award distributions, would then be used to reimburse Posco for employer-side payroll taxes incurred in the settlement process.  Motion, at 6:10-18, n. 8; Exh. A to Motion.

1   After these deductions, the remaining amount would be distributed to the Proposed Class,

2   defined as:

3   
4   
5   
6   
7   
> all individuals employed as non-exempt, production and maintenance ("P&M") employees by Defendant at Defendants' steel-manufacturing plant and facilities in Pittsburg, California at any time from four years prior to the filing of the February 2, 2012 Complaint ("Complaint") to the date of entry of preliminary approval of the Settlement Agreement except that it will not include any member who files a timely request for exclusion as provided in the Settlement Agreement. The individuals who do not request exclusion will be "Eligible Class Members."

8   The net distribution amount would be divided among those class members who submitted

9   a timely claim. Each of those class members' settlement share "will be determined based on the

10  total number of weeks" that the employee worked with Posco. Exh. A to Motion, at ¶ 8-F-i-a.

11  The Heffler Claims Group would, subject to Court approval, administer the settlement, contact

12  potential class members, and provide them with notice of the settlement and their right to opt out.

13  Id., at ¶¶11, 13-15; see also Exh. B to Motion. As part of the settlement, Cordy and all class

14  members who do not opt out of the settlement would release all claims that could have been

15  brought on the basis of the facts alleged in the Complaint, including but not limited to the claims

16  listed in the Complaint. Exh. A to Motion, at ¶ 16.

17  Settlement award checks that remain uncashed after 180 days would be distributed in equal

18  amounts to the Legal Aid Society's Employment Law Center and the Juvenile Diabetes Research

19  Foundation as *cy pres* recipients. Motion, at 8:20-22; Exh. A to Motion, at ¶ 14-G.

20  Cordy now seeks preliminary approval of the Settlement Agreement, appointment of

21  Heffler Claims Group as claims administrator, provisional certification of the Proposed Class,

22  appointment of Carl Cordy as class representative, appointment of Attorneys Todd M. Schneider,

23  Carolyn H. Cottrell, Schneider Wallace Cottrell Konecky LLP, Scott Brown and Brown | Poore

24  LLP as class counsel, and approval of the form of Class Notice, terms of the request for a

25  permanent injunction, the proposed schedule and procedure for completing the final approval

26  process, and preliminary approval of Class Counsel's request for attorney's fees. Motion, at

27  2:6-3:3.

28  / / /

3

**C.   Legal Standard**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, the settlement of a certified class action must still be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted).

**D.   Jurisdiction**

This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million. Cordy alleges, and Defendants do not dispute, that members of the Class are citizens of a state different than Defendants. See Complaint, at ¶ 8.

**III.   ANALYSIS**

**A.   Fairness of the Settlement**

In examining a pre-certification settlement agreement, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citation omitted). A court may not "delete, modify or substitute certain provisions" of the settlement; rather "[t]he settlement must stand or fall in its entirety." Id.

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives

or segments of the class, and falls with the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

There is no basis for the Court to conclude that there has been either explicit or implicit collusion. Nonetheless, the Court cannot find on the basis of this motion that the settlement has no obvious deficiencies, grants no preferential treatment to segments of the class, and falls within the range of possible approval.

### 1. Obvious Deficiencies

The proposed settlement may be deficient by providing for a *cy pres* award that lacks a nexus to the plaintiff class. "To avoid the 'many nascent dangers to the fairness of the distribution process,'" courts "require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011). "A *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," and must not benefit a group 'too remote from the plaintiff class.'" Dennis, 697 F.3d at 865 (quoting Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1308 (9th Cir. 1990)).

Cordy does not explain why the proposed distribution to the Juvenile Diabetes Research Fund is relevant to the Proposed Class, much less that the award "qualif[ies] as 'the next best distribution' to giving the funds directly to class members." Dennis, 697 F.3d at 865 (quoting Six Mexican Workers, 904 F.2d at 1308). A court cannot approve settlement awards that are "divorced from the concerns embodied in" the statutes under which plaintiffs have brought suit. Dennis, 697 F.3d at 866 (9th Cir. 2012).

Since these and other standards set by the Ninth Circuit in Dennis have not been satisfied, the Court cannot concluded that the proposed distribution of unclaimed funds is fair to the proposed class. If the parties choose to resubmit a proposed settlement that includes the Juvenile Diabetes Research Fund, they should explain how that organization satisfies the standard set forth in Dennis, supra.

### 2. Preferential Treatment

The Court cannot conclude that the proposed scheme for distributing funds to each class

member would not unfairly benefit some class members at the expense of others. The distribution scheme is based primarily on the number of weeks that each of the class members worked. But Cordy has brought some claims for which the extent of damages does not appear to be proportional to the amount of time worked. The proposed class members' potential relief from Cordy's fourth through seventh causes of action appears to be determined, at least in part, by factors other than the amount of time worked. Although the Court recognizes that the distribution of damages among class members is not a matter of mathematical precision, on the basis of the information provided, the Court cannot determine whether it is fair to compensate all employees only on the basis of their time worked.

In addition, the motion does not explain why it is fair and reasonable to measure the proposed class members' recovery in terms of weeks worked rather than hours, days, or shifts. The settlement agreement states that an employee will get the same credit for a week worked whether he or she worked a single shift that week or many shifts throughout the week. See Exh. A to Motion, at ¶ 8-F-i-a. It is not clear why this, too, is fair to all proposed class members.

### 3. Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080.

Cordy's counsel states that they have "developed a rough estimate of the damages that would result if Cordy were to prevail at trial," but the estimate appears nowhere in the record before the Court. Id., at ¶ 9. Cordy provides no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims.

The Court recognizes, as Cordy argues, that "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000). But any fraction has a denominator, and without knowing what it is the Court cannot balance

6

plaintiffs' expected recovery against the proposed settlement amount.

Finally, Cordy's motion states at two places that "[n]o portion of the Gross Settlement Amount will revert to Defendant." Motion, at 1:21, 6:15. But that statement is inconsistent with the provision in the proposed settlement that uses any portion of the Hold-Back Fund that remains undistributed after 120 days to reimburse Posco for employer-side payroll taxes incurred during the settlement process. Cordy does not demonstrate why it is fair to proposed class members to divert this amount, which could reach $125,000, back to Posco.

### B.     Provisional Class Certification and Other Requested Relief

Since the Court will not grant preliminary approval of the proposed settlement at this time, the Court will not address any of Cordy's other related requests for relief, including its motion for preliminary class certification. For the benefit of the parties, the Court notes that the issues discussed at III-A-2, *supra,* also present concerns for the commonality, typicality, and adequacy requirements of Rule 23. "The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626, n. 20 (1997) (quoting General Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 156, 158, n. 13 (1982). Among other functions, these requirements serve as ways to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158, n. 13.

Moreover, to establish commonality and predominance, Cordy may not simply rest on the allegations in his complaint to establish that Cordy was subject to uniform policies with regard to his causes of action. See Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833-36 (9th Cir. 2013). "Plaintiffs must show 'significant proof'" that Cosco "'operated under a general policy of [violating California labor laws].'" Id. (quoting Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 (9th Cir. 2011).

The remaining requirements of Rule 23 appear to be satisfied.

### IV.    CONCLUSION

Cordy's motion for preliminary approval of the proposed settlement is DENIED WITHOUT PREJUDICE. Cordy may, within sixty days of the date this Order is filed, file a new

motion for preliminary approval of the proposed settlement that cures each of the deficiencies identified in this Order.  A case management conference will be held on October 23, 2013 at 2:00 p.m.

**IT IS SO ORDERED**.

Dated:  July 31, 2013



_____
JON S. TIGAR
United States District Judge