TODD M. SCHNEIDER (SBN 158253)
CAROLYN H. COTTRELL (SBN 166977)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

SCOTT A. BROWN (SBN 177099)
BROWN | POORE LLP
1350 Treat Boulevard, Suite 400
Walnut Creek, California 94597
Telephone: (925) 943-1166
Facsimile: (925) 943-1164

Attorneys for Plaintiff and the Putative Subclasses

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CARL CORDY, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>USS-POSCO INDUSTRIES, UNITED STATES STEEL CORPORATION, POSCO – CALIFORNIA CORPORATION, PITCAL, INC., and DOES 1 to 50<br><br>        Defendants. | Case No.: 3:12-cv-00553-JST<br><br>**PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT SUBCLASSES, APPROVAL OF NOTICE OF SETTLEMENT, AND SETTING OF HEARING FOR FINAL APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>CLASS ACTION<br><br>Date: November 21, 2013<br>Time: 2:00 pm<br>Courtroom: 9<br>Judge: The Hon. Jon S. Tigar |

**NOTICE OF MOTION AND MOTION**

To all parties and their attorneys of record, please take notice that on November 21, 2013, at 2:00 p.m. in the United States District Court, Northern District of California, the Honorable Jon S. Tigar presiding, Plaintiff, Carl Cordy, hereby moves for an Order pursuant to Federal Rule of Civil Procedure ("FRCP") 23(e):

1.     Granting preliminary approval of the class-action Settlement Agreement (attached as **Exhibit A** to this Motion),  and the related Addendum (attached as **Exhibit B** to this Motion);

2.     Appointing Heffler Claims Group as Claims Administrator and preliminarily approving the costs of claims administration;

3.     For purposes of settling this lawsuit, provisionally certifying the following Unpaid Time Subclass pending final approval of the settlement:

> all individuals employed as non-exempt, production and maintenance ("P&M") employees by Defendant at Defendants' steel-manufacturing plant and facilities in Pittsburg, California at any time from February 2, 2008 to the date of entry of preliminary approval of the Settlement Agreement except that it will not include any member who files a timely request for exclusion as provided in the Settlement Agreement.

4.   For purposes of settling this lawsuit, provisionally certifying the following Itemized Wage Statement Penalty Subclass pending final approval of the settlement:

> all individuals employed as non-exempt, production and maintenance ("P&M") employees by Defendant at Defendants' steel-manufacturing plant and facilities in Pittsburg, California who performed services for which they received a paycheck for Defendant at any time from February 2, 2011 through April 30, 2013, the date Defendant started to provide wage statements that comply with California Labor Code Section 226 except that it will not include any member who files a timely request for exclusion as provided in the Settlement Agreement.

5.     For purposes of settling this lawsuit, provisionally certifying the following Continual Presence Subclass pending final approval of the settlement:

all individuals employed as non-exempt, production and maintenance ("P&M") employees that held a Continual Presence position[1] at Defendants' steel-manufacturing plant and facilities in Pittsburg, California who performed services for Defendant at any time from February 2, 2008 through May 31, 2011 when Defendant instituted its missed meal period payment system except that it will not include any member who files a timely request for exclusion as provided in the Settlement Agreement.

6. For purposes of settling this lawsuit, provisionally certifying the following Waiting Time Penalty Subclass pending final approval of the settlement:

all individuals employed as non-exempt, production and maintenance ("P&M") employees by Defendant at Defendants' steel-manufacturing plant and facilities in Pittsburg, California who left their employment with Defendant, either by termination or quit, at any time from February 2, 2009 to the date of entry of preliminary approval of the Settlement Agreement except that it will not include any member who files a timely request for exclusion as provided in the Settlement Agreement.

7. Appointing Plaintiff Carl Cordy as the representative of the Unpaid Time Subclass, the Continual Presence Subclass and the Waiting Time Penalty Subclass;

8. Appointing Donald Jones as the representative of the Itemized Wage Statement Penalty Subclass;

9. Approving Todd M. Schneider, Carolyn H. Cottrell and Schneider Wallace Cottrell Konecky LLP, and Scott Brown and Brown | Poore LLP as Class Counsel ("Class Counsel") for the Members of all of the Subclasses, (collectively referred to as "Settlement Subclass Members");

10. Approving the form of Class Notice attached as **Exhibit C** to this Motion;

11. Approving the terms of the request for permanent injunction attached as **Exhibit D** to this Motion; and

---

[1] The Continual Presence positions include the following:  PLTCM Side Trim Operator, Oxide Loader at the Acid Plant, KMCAL Entry Operator, KMCAL Exit Operator, CC2 Entry Operator, TWTP Operator, Boiler House Operator, CSA Lead Operators (Job Code 5160-14), (Job Code 5160-03), (Job Code 5190-03), (Job Code 5190-02), (Job Code 5375-03), (Job Code 7025-03), (Job Code 7025-03), (Job Code 6066-03).  Declaration of Francis Ortman III ("Ortman Decl.") at ¶ 2.

2

12.     Approving the proposed schedule and procedure for completing the final approval process as set forth in the Settlement Agreement.

13.     Preliminarily approving Class Counsel's request for attorneys' fees to be paid from the Gross Settlement Amount not to exceed thirty-three percent (33%) of the Gross Settlement Amount) and costs currently estimated to be $53,455.

This Amended Motion is based on the attached Memorandum of Points and Authorities, the Declaration of Carolyn H. Cottrell in Support of the Amended Motion, Declaration of Scott Brown in Support of the Amended Motion, the Declaration of Carl Cordy in Support of the Amended Motion, Declaration of Donald Jones in Support of the Amended Motion, the Declaration of Francis Ortman III in Support of the Amended Motion, Stipulation Appointing Donald Jones as Class Representative of the Itemized Wage Statement Penalty Subclass and all other records, pleadings and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on the Motion.

Defendant USS-POSCO Industries does not oppose this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. PROCEDURAL HISTORY ................................................................................ 4

    A. PLAINTIFF'S CLAIMS ........................................................................ 4

    B. DISCOVERY ........................................................................................ 5

    C. ANALYSIS OF CLASS-WIDE DAMAGES AND SETTLEMENT
        NEGOTIATIONS ................................................................................ 6

        1. Plaintiff's claim that Settlement Subclass Members worked without pay ........... 7

        2. Plaintiff's claim for Premium Pay for Missed Meal and Rest Periods ................ 8

        3. Plaintiff's Penalty Claims. ................................................................ 9

        4. Plaintiff's Total Damages and Percentage Recovered Under This Settlement .. 10

    D. MEDIATION ...................................................................................... 11

III. CLASS ACTION SETTLEMENT APPROVAL PROCEDURE ....................... 11

IV. TERMS OF THE SETTLEMENT ..................................................................... 12

    A. BASIC TERMS .................................................................................. 12

    B. CALCULATION OF SETTLEMENT AWARDS FOR PARTICIPATING
        SETTLEMENT SUBCLASS MEMBERS ........................................... 12

        1. The Parties' Efforts to Ensure Fairness to all Settlement Subclass Members .... 13

        2. The Parties' Allocation of the Settlement Proceeds ........................................... 13

        3. The Distribution Formula for Calculation of Settlement Awards for Members
        of Each of the Subclasses ................................................................... 13

    C. SCOPE OF RELEASE AND FINAL JUDGMENT ................................ 14

    D. PAYMENTS TO THE STATE ............................................................ 15

    E. ADMINISTRATION OF SETTLEMENT ........................................... 16

    F. UNCLAIMED FUNDS ....................................................................... 17

V. THE COURT SHOULD GRAND PRELIMINARY APPROVAL OF THE CLASS
    ACTION SETTLEMENT AND SCHEDULE A FAIRNESS HEARING ........... 17

1

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

A.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE........17

    1.    The Terms of the Proposed Settlement are Fair, Reasonable and Adequate......19

    2.    To Further Ensure Fairness, The Parties Have Agreed to Settlement Subclasses, and Distribution of the Settlement Proceeds Has Been Specifically Tailored to Each Claim....................................................21

    3.    Contribution of the Monies That Remain in the Hold-Back Fund to Defendant's Share of the Payroll Taxes ...........................................22

    4.    The Parties Reached a Settlement After Extensive Investigation, Discovery, and Analysis of the Class Claims ..............................................24

    5.    Litigation of this Action Not Only Would Delay Recovery, but Would be Expensive, Time Consuming, and Would Involve Substantial Risk................24

    6.    The Proposed Settlement is Well Within the Range of Reasonableness...........25

    7.    Class Counsel are Experienced Class Action Litigators....................................26

    8.    Defendant Would Continue to Contest Liability on All Issues .........................26

B.    PLAINTIFF CORDY'S REQUEST FOR AN ENHANCEMENT AWARD FOR HIS SERVICE TO THE CLASS IS REASONABLE ..............................................28

C.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE ...30

VI.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT SUBCLASSES IS APPROPRIATE...........................................................................33

A.    CLASS CERTIFICATION IS PROPER UNDER FRCP 23(A) .............................33

    1.    The Size of the Subclasses are So Numerous that Joinder is Impracticable ......34

    2.    Commonality and Predominance.........................................................34

        a)    Facts common to all P&M employees    35

        b)    Work Performed Off The Clock and For Which Employees Are Not Compensated    35

        c)    Denial of Meal and Rest Periods for Continual Presence Workers    37

        d)    Statutorily Compliant Wage Statements    38

        e)    Failure to Pay on Termination or Quit    39

        f)    Plaintiff's Claims are Typical of Those of the Class    40

        g)    Plaintiff, Mr. Jones and Class Counsel are Adequate Representatives of the Class    41

2

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

B.     CLASS CERTIFICATION IS PROPER UNDER FRCP 23(B)(3)...........................42

VII.   THE PROPOSED NOTICE PROVIDES ADEQUATE NOTICE TO THE CLASS AND
       SUFFICIENT DUE PROCESS ...............................................................................45

VIII.  THE PROPOSED SCHEDULING ORDER ......................................................................47

IX.    CONCLUSION.................................................................................................................48

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997).................................................................................................43

*Amchem Products, Inc. v. Windsor*
521 U.S. 591 (1997).................................................................................................33

*Baby Neal v. Casey*
43 F.3d 48 (3d Cir. 1994) .......................................................................................42

*Barela v. Ralph's Grocery Company*
(Los Angeles Super. Ct., No. BC070061, June 5, 1998) ..................................31

*Berger v. Cleveland Clinic Found.*
2007 WL 2902907 (N.D. Ohio Sept. 29, 2007)...................................................44

*Big Lots Overtime Cases*
(San Bernardino Super. Ct., JCC Proceeding No. 4283, February 4, 2004) ...........31

*Blum v. Stenson*
465 U.S. 886 (1984).................................................................................................31

*Caliber Bodyworks, Inc. v. Sup. Ct. (Herrera)*
134 Cal.App.4th 365 (2005) ..................................................................................15

*Cervantes v. Celestica Corp.*
253 F.R.D. 562 (C.D. Cal. 2008)...........................................................................28

*Chaaban v. Wet Seal, Inc.*
2012 WL 1114568 (Cal. Ct. App. Apr. 4, 2012)................................................27

*Churchill Village LLC v. General Electric*
361 F.3d 566 (9th Cir. 2004) .................................................................................45

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992) ...............................................................................18

*Cotton v. Hinton*
559 F.2d 1326 (5th Cir. 1977) ...............................................................................26

*Davis v. The Money Store, Inc.*
(Sacramento Super. Ct., No. 99AS01716, December 26, 2000) .....................31

*Dilts v. Penske Logistics*
LLC, 2010 WL 1709807 (S.D. Cal. April 26, 2010)..........................................28

*Doe v. Miller*
216 F.R.D. 462 (S.D. Iowa 2003)..........................................................................30

4

*Ellmore v. Ditech Funding Corp.*
   (C.D. Cal., No. SAVC 01-0093, Sept. 12, 2002)........................................................31

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*
   137 F.R.D. 240 (S.D.Ohio 1991) ....................................................................................29

*Entin v. Barg*
   412 F.Supp. 508 (E.D. Pa. 1976) ....................................................................................20

*Espinoza v. Domino's Pizza*, LLC
   2009 WL 882845 (C.D. Cal. Feb. 18, 2009) ..................................................................28

*Fischel v. Equitable Life Assur. Society of U.S.*
   307 F.3d 997 (9th Cir. 2002) ...........................................................................................32

*Forrester v. Roth's I.G.A. Foodliner, Inc.*
   646 F.2d 413 (9th Cir. 1981) ...........................................................................................36

*Fry v. Hayt, Hayt & Landau*
   198 F.R.D. 461 (E.D.Pa. 2000)........................................................................33, 34, 40, 41

*General Tel. Co. of S.W. v. Falcon*
   457 U.S. 147 (1982)..........................................................................................................40

*Ghazaryan v. Diva Limousine, Ltd.*
   169 Cal. App. 4th 1524  (2008) .......................................................................................36

*Glass v. UBS Fin. Servs., Inc.*
   2007 WL 474936 (N.D.Cal. Jan.26, 2007)......................................................................23

*Guifi Li v. A Perfect Day Franchise Inc.*
   2012 WL 2236752 (N.D. Cal. June 15, 2012)..................................................................15

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ..................................................................................passim

*Harris v. Vector Mktg. Corp.*
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................................................23

*Holmes v. Continental Can Co.*
   706 F.2d 1144 (11th Cir.1983) ........................................................................................21

*Hughes v. Microsoft*
   2001 U.S. Dist. LEXIS 5976 (W.D. Wash. 2001)...........................................................29

Hughes v. WinCo Foods
   2012 WL 34483 (C.D. Cal. Jan. 4, 2012) .......................................................................27

*In re Activision Sec. Litig.*
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................30

*In Re Armored Car Antitrust Litig.*
   472 F.Supp. 1357 (N.D. 1979) ........................................................................................20

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*
    789 F.Supp.2d 935 (N.D.Ill.2011) ................................................................. 21

*In re Excess Value Insurance Coverage Litigation*
    2004 WL 1724980 (S.D.N.Y. July 30, 2004) .............................................. 21

*In Re Four Seasons Secs. Laws Litig.*
    58 F.R.D. 19 (W.D. Okla. 1972) ................................................................... 20

*In re General Motors Corp.*
    55 F.3d 768 (3d Cir. 1995) ........................................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ......................................................... 19, 21, 25

*In re MetLife Demutualization Litigation*
    689 F.Supp.2d 297 (E.D.N.Y.2010) ............................................................ 21

*In re Michael Milken & Assoc. Sec. Litig.*
    150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................... 19

*In re Microsoft I-V Cases*
    135 Cal. App. 4th 706 (2006) ...................................................................... 23

*In re Netflix Privacy Litig.*
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................... 17

*In Re Southern Ohio Correctional Facility*
    175 F.R.D. 270 (S.D.Ohio 1997) ................................................................. 29

*In Re Sunrise Secs. Litig.*
    131 F.R.D. 450 (E.D. Pa. 1990) .................................................................. 20

*In re Tableware Antitrust Litig.*
    484 F.Supp.2d 1078 (N.D.Cal. 2007) ......................................................... 18

*In re Warfarin Sodium Antitrust Litig.*
    212 F.R.D. 231 (D. Del. 2002) .................................................................... 20

*In re Washington Public Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994) ....................................................................... 33

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*
    2007 WL 3045994 (N.D. Cal. Oct. 18, 2007) ........................................... 43

*Ingram v. The Coca-Cola Co.*
    200 F.R.D. 685 (N.D.Ga. 2001) .................................................................. 29

*Kamar v. Radio Shack Corp.*
    2008 WL 4552953 (C.D. Cal. October 8, 2008) ....................................... 34

*Knight v. Red Door Salons, Inc.*
    2009 WL 248367 (N.D. Cal. 2009) ............................................................ 30

6

*Koike v. Starbucks Corp.*
    378 Fed. Appx. 659 (9th Cir. 2010) ................................................................8

*Lealao v. Beneficial Cal., Inc.*
    82 Cal. App. 4th 19 (2000) ..............................................................................31

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) ...........................................................................41

*Linney v. Cellular Alaska Partnership*
    151 F.3d 1234 (9th Cir. 1998) .........................................................................26

*Local Joint Executive Bd of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001) .........................................................................43

*McKenzie v. Federal Exp. Corp.*
    765 F.Supp.2d 1222 (N.D. Cal. 2011) ............................................................38

*Melendres v. City of Los Angeles*
    45 Cal. App. 3d 267 (Ct. App. 1975) ..............................................................30

*Mendoza v. U.S.*
    623 F.2d 1338 (9th Cir. 1980) .........................................................................45

*Milstein v. Werner*
    57 F.R.D. 515 (S.D.N.Y. 1972) ......................................................................26

*Minor v. FedEx Office and Print Services, Inc.*
    2013 WL 503268 (N.D.Cal. February 8, 2013) ...............................................22

*Miskell v. Automobile Club of Southern California*
    (Orange County Super. Ct., No. 01CC09035, May 27, 2003) .........................31

*Molski v. Gleich*
    318 F.3d 949 (9th Cir. 2003) ...........................................................................42

*Morgan v. United Retail, Inc.*
    186 Cal.App.4th 1136 (Ct. App. 2010) ...........................................................38

*Morton v. Valley Transport. Inc.*
    2007 WL 1113999  (N.D. Cal. 2007) ..............................................................28

*Nachshin v. AOL, LLC*
    663 F.3d 1034 (9th Cir. 2011) .........................................................................17

*Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*
    221 F.R.D. 523 (C.D.Cal. 2004) .....................................................................18

*Navarro v. Servisair*
    2010 WL 1729538 (N.D. Cal. 2010) .........................................................22, 23

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) .................................................................19, 21, 25

7

*Pigford v. Glickman*
    185 F.R.D. 82 (D.D.C. 1999) .................................................................. 18

*Powers v. Eichen*
    229 F.3d 1249 (9th Cir. 2000) ................................................................ 30

*Purnell v. Sunrise Senior Living Management, Inc.*
    2012 WL 1951487 (C.D. Cal. Feb. 27, 2012) ......................................... 27

*Reed v. County of Orange*
    266 F.R.D. 446 (C.D. Cal. 2010) ............................................................. 8

*Reed v. General Motors Corp.*
    703 F.2d 170 (5th Cir. 1983) .................................................................. 19

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*
    2011 WL 5884224 (E.D. Cal. 2011) ........................................................ 31

*Roberts v. Texaco*
    979 F.Supp. 185 (S.D.N.Y. 1997) ........................................................... 29

*Rodriguez v. West Publ'g Corp.*
    2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ........................................ 19

*Schwartz v. Dallas Cowboys Football Club*, Ltd.
    157 F.Supp.2d 561 (E.D.Pa. 2001) ......................................................... 18

*Sconce/Lamb Cremation Cases*
    (Los Angeles Super. Ct., JCC Proceeding No. 2085, March 24, 1992) ....... 31

*Six (6) Mexican Workers v. Ariz. Citrus Growers*
    904 F.2d 1301 (9th Cir. 1990) ................................................................ 31

*Smith v. T-Mobile USA, Inc .*
    2007 WL 2385131 (C.D. Cal. Aug. 15, 2007) ........................................... 8

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) .................................................................. 30

*Thurman v. Bayshore Transit Management, Inc.*
    203 Cal.App.4th 1112 (2012) ................................................................. 15

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) .................................................................. 33

*Van Vranken v. Atlantic Richfield Co.*
    901 F.Supp. 294 (N.D.Cal. 1995) ........................................................... 29

*Vasquez v. Coast Valley Roofing*
    266 F.R.D. 482 (E.D. Cal. 2010) ...................................................... 22, 30

*Villa v. United Site Servs. of California, Inc.*
    2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) ......................................... 27

8

*Vizcaino v. Microsoft Corp.*
290 F. 3d 1043 (9th Cir. 2002) ...........................................................................32

*Wal-Mart Stores, Inc. v. Dukes*
131 S.Ct. 2541 (2011) .........................................................................................34

*Wang v. Chinese Daily News*
2013 WL 4712728 (C.A. 9th Cir. September 3, 2013 ....................................34

*Washington v. Joe's Crab Shack*
271 F.R.D. 629  (N.D. Cal. 2010)..........................................................................8

*Whiteway v. FedEx Kinko's Office and Print Services*
2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ..................................................44

*Wren v. RGIS Inventory Specialists*
2011 WL 1230826 (N.D.Cal.,2011) ...................................................................31

*Yap v. Sumitomo Corp.*
1991 WL 29112 (S.D.N.Y. 1991)........................................................................29

## STATUTES

29 U.S.C. § 203(g) .......................................................................................................36

Cal. Labor Code § 201 ..........................................................................................15, 39

Cal. Labor Code § 203 .......................................................................................9, 15, 39

Cal. Labor Code § 204 ..........................................................................................15, 35

Cal. Labor Code § 226 ...............................................................................5, 14, 15, 38

Cal. Labor Code § 226(a) ............................................................................................38

Cal. Labor Code § 226(e) ............................................................................................10

Cal. Labor Code § 226.7 .......................................................................................15, 37

Cal. Labor Code § 510 .................................................................................................15

Cal. Labor Code § 512 .........................................................................................15, 37

Cal. Labor Code § 1194 ........................................................................................15, 35

Cal. Labor Code § 1194.2 ............................................................................................15

Cal. Labor Code § 2698 ...............................................................................................15

Cal. Labor Code § 2699(a) ..........................................................................................15

Cal. Labor Code § 2699(e)(2) ......................................................................................15

9

Cal. Labor Code § 2699(f) ............................................................................................ 15

California Business and Professions Code § 17200 ............................................... 4, 15

Labor Code Private Attorneys General Act of 2004 §2699 (f) ..................................... 2

Labor Code Private Attorneys General Act of 2004 §2699(a) ...................................... 2

## REGULATIONS

29 C.F.R. § 788.223 .................................................................................................... 36

Cal. Code Regs. Tit. 8, § 11010 ................................................................................. 36

Cal. Code Regs. Tit. 8, § 13520 ................................................................................. 28

## RULES

FRCP 23, Advisory Comm. Notes, 1966 amendments ................................................ 43

FRCP 23 ...................................................................................................................... 43

FRCP 23(a) ........................................................................................................... 33, 42

FRCP 23(a)(1) ............................................................................................................. 34

FRCP 23(a)(2) ....................................................................................................... 34, 35

FRCP 23(a)(3) ....................................................................................................... 35, 40

FRCP 23(a)(4) ............................................................................................................. 41

FRCP 23(b) ........................................................................................................... 33, 42

FRCP 23(b)(2) ............................................................................................................. 42

FRCP 23(b)(3) ................................................................................................... 33, 34, 42

FRCP 23(c)(1) ............................................................................................................. 33

FRCP 23(c)(2)(B) ........................................................................................................ 45

FRCP 23(e) ...................................................................................................... 11, 17, 18, 45

FRCP 23(h) ........................................................................................................... 3, 12, 46

Rule 23(b)(3) .............................................................................................................. 44

1

**OTHER AUTHORITIES**

2

5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) ........................................... 18

3

Alba Conte & Herbert Newberg, Newberg on Class Actions  §8.39 (4th ed. 2002) ...................... 46

4

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002) § 11:26 ................... 12

5

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002) §11:24 .............. 11, 46

6

Alba Conte & Herbert Newberg, Newberg on Class Actions § 8.21 (4th ed. 2002) ...................... 46

7

Alba Conte & Herbert Newberg, Newberg on Class Actions §8.39 (4th ed. 2002) ...................... 45

8

Herbert Newberg & Alba Conte, 3 Newberg on Class Actions § 10:15 (4th ed.2010) ................. 23

9

Manual for Complex Litigation (Fourth) § 21.63 (2006) ............................................... 11

10

Manual for Complex Litigation § 21.311 (4th ed. 2004) ............................................... 46

11

Manual for Complex Litigation § 21.312 (4th ed. 2004) ............................................... 46

12

Manual for Complex Litigation § 21.632 (4th ed. 2004) ............................................... 19

13

Manual for Complex Litigation § 30.41 (4th ed. 2004) ............................................... 18

14

Manual for Complex Litigation §21.312 (4th ed. 2004) ............................................... 46

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

I. **INTRODUCTION**[2]

Plaintiff Carl Cordy ("Plaintiff"), individually and on behalf of the putative subclasses, seeks preliminary approval of the settlement of this class action against USS-POSCO Industries ("Defendant"). Through this class-action settlement, the parties are resolving numerous claims that almost certainly never would have been prosecuted as individual actions, and in so doing provide substantial benefit to the members of the class.

On July 23, 2013, Plaintiff filed a motion for preliminary approval of class action settlement with the Court.  Doc. No. 48.  On August 1, 2013, the Court denied, without prejudice, Plaintiff's motion for preliminary approval of class action settlement.   The Court requested that the parties provide supplemental briefing regarding the following issues (1) justification for the selection of the Juvenile Diabetes Research Fund as a *cy pres* recipient and an explanation regarding how it is relevant to the Proposed Class; (2) an explanation regarding the fairness of the distribution scheme based on the number of weeks worked as opposed to a distribution formula based on hours, days, or shifts worked; (3) provision of the range of Plaintiff's possible recovery to determine whether the settlement amount is fair and adequate; (4) an explanation of the fairness of contributing the undistributed amount of the Hold-Back Fund for employer-side payroll taxes on the settlement awards; and (5) provision of proof that Defendant operated under a general policy of violating the wage and hour laws at issue in this case thereby satisfying the commonality, typicality and predominance requirements of Rule 23.  This amended motion addresses each of the issues highlighted by the Court.

Plaintiff filed this class action in the United States District Court Northern District of California on February 2, 2012.  Plaintiff alleged that Defendant's had policies and/or practices of (1) denying P&M employees compensation for all hours worked; (2) denying P&M employees bona fide meal and rest periods (and refusing to pay mandated premium pay for missed breaks, as

---

[2] Plaintiff recognizes that this memorandum exceeds the maximum number of pages allowed under the local rules.  To that end, on October 3, 2013 Plaintiff filed an Unopposed Motion for Leave to Exceed Page Limits.  Doc. No. 56.  The Court has not issued an order on the motion.

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

required by California law); (3) failing to provide P&M employees with itemized wage statements; and (4) failing to timely pay P&M employees' wages upon termination or resignation. Plaintiff also included claims for penalties pursuant to §§ 2699(a) and (f) of the Private Attorneys General Act ("PAGA"). Defendant denied all of Plaintiff's claims and presented more than 40 declarations from the putative subclass members supporting Defendant's defenses.

After mediation before Jeffrey Krivis, an experienced and respected wage-and-hour mediator, and extensive arm's-length negotiations between counsel the parties have reached a class-wide settlement of this dispute. The basic terms of the proposed Settlement Agreement are as follows:

1.    Defendant shall pay $3,500,000 as the Gross Settlement Amount;

2.    An estimated total of $2,170,658 will be available for distribution to the Settlement Subclasses and the distribution formula for awards for members of each subclass will be tailored to each of the claims;

3.    A stipulated permanent injunction requiring that employee wage statements contain all information required under California law and that Defendant maintain records of the actual hours worked by employees;

4.    Payment of $25,000 to the California Labor Workforce Development Agency ("LWDA");

5.    Set aside a $125,000 Hold-Back Fund for payment of late claims and expenses, the remainder of which will be distributed to Defendant as reimbursement for some of the employer payroll taxes, which due to a recent change in the law, have increased from approximately 9% to 19%;

6.    Settlement award checks that remain un-cashed after 180 days shall be distributed to the sole designated *cy pres* recipient, Legal Aid Society-Employment Law Center;

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

7.     Plaintiff requests that the Court appoint Plaintiff Carl Cordy as the representative of the Unpaid Time Subclass, the Continual Presence Subclass and the Waiting Time Penalty Subclass;

8.     Plaintiff requests that the Court appoint Donald Jones as the representative of the Itemized Wage Statement Penalty Subclass.[3]

9.     Plaintiff requests that an enhancement award of $8,000 be awarded from the Gross Settlement Amount to Plaintiff Carl Cordy who was instrumental in assisting Class Counsel in prosecuting this action and functioned as a representative of the Settlement Subclasses;

10.     Plaintiff requests that an enhancement award of $1,500 be awarded from the Gross Settlement Amount to Donald Jones who was instrumental in assisting Class Counsel with this supplemental settlement process and provided valuable information supporting the claims of the members of the wage statement subclass;

11.     Class Counsel will seek, in a separate motion under Federal Rule of Civil Procedure ("FRCP") 23(h), an award of attorneys' fees to be paid from the Gross Settlement Amount (the Settlement Agreement provides that Class Counsel may seek an award not to exceed thirty-three percent (33%) of the Gross Settlement Amount;

12.     Plaintiff requests the reimbursement of costs to Class Counsel from the Gross Settlement Amount. The costs incurred by Class Counsel to date are $53,455;

13.     Heffler Claims Group ("Heffler") an experienced class-action settlement administrator has estimated that its fees and costs to administer the settlement will be $19,621, which will be paid from the Gross Settlement Amount.

The proposed Settlement Agreement satisfies all of the criteria for preliminary settlement approval under federal law and falls well within the range of reasonableness. Accordingly, Plaintiff requests that the Court preliminarily approve the proposed settlement, provisionally certify the

---

[3] A Stipulation and Proposed Order Regarding Appointment of Donald Jones as Class Representative will be submitted with the preliminary approval papers.

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

settlement subclasses as proposed herein, appoint Todd M. Schneider and Carolyn H. Cottrell of

Schneider Wallace Cottrell Konecky LLP and Scott A. Brown of Brown Poore LLP as Class

Counsel, appoint Plaintiff Carl Cordy and Donald Jones as class representatives, approve the

notice for distribution to the settlement subclass members, schedule a final approval hearing, and

approve the proposed schedule for relevant dates and deadlines regarding the administration of the

settlement.

## II.   PROCEDURAL HISTORY

### A.   PLAINTIFF'S CLAIMS

Plaintiff alleges that Defendant has engaged in numerous violations of the California Labor

Code and the California Business and Professions Code §§ 17200, *et seq.* ("Unfair Competition

Law" or "UCL").  These allegations include that Defendant denied P&M employees compensation

for all hours worked, denied P&M employees bona fide meal and rest periods and did not pay

required premium pay for missed breaks, failed to provide P&M employees with statutorily

compliant itemized wage statements, and failed to timely pay P&M employees' wages upon

termination or resignation.  Plaintiff's specific allegations are as follows:

Plaintiff alleges that Defendant only pays P&M employees at its Pittsburg, California steel

finishing plant[4] for the work performed at their work areas during their scheduled shift.  In other

words, Plaintiff alleges that Defendant's compensation scheme fails to compensate P&M

employees for any time worked before or after their scheduled shifts.  Time worked outside of

scheduled shifts could include the time between the P&M employees' first principal activity of the

day and their last principal activity of the day, including time spent donning and doffing personal

protective equipment ("PPE")[5] and walking to and from their work stations.  Time worked outside

---

[4] Defendant operates a steel finishing plant in Pittsburg, California where cold rolled, galvanized and tin mill products are manufactured from hot rolled steel. The facility has four divisions which are staffed by hourly non-exempt P&M employees, namely Tin, Rolling, Sheet and Reliability (maintenance).

[5] Some P&M employees may wear and use:  hard hats, hearing protection, eye protection, metatarsal foot protection, long sleeved shirts, flash and fire resistant uniforms, Kevlar gloves, Kevlar wristlets, Kevlar glove inserts, hot mill glove inserts, hot work gloves, acid resistant gloves, latex gloves, leather gloves, gloves with cotton pads, safety locks and tags, protective aprons and suits, face shields, respirators, dust masks, safety harnesses, high visibility vests,

1  their scheduled shifts also could include what many P&M employees, and managers, identified as

2  the "six minute rule". There was testimony that Defendant has a policy and practice of requiring

3  P&M employees to swipe in at time clocks at least six minutes before their scheduled shifts

4  commence.[6]

5       In addition, Plaintiff alleges that Defendant failed, until recently, to provide wage

6  statements that comply with Labor Code § 226. Finally, Plaintiff alleges that Defendant fails to

7  pay premium pay for those P&M employees classified as "Continual Presence" workers who are

8  denied uninterrupted meal and/or rest breaks.[7]

9       Defendant denied Plaintiff's allegations and vigorously litigated the case, including the

10 collection and production of 40 declarations from putative subclass members that support

11 Defendant's defenses. Defendant also disputed the legal claims and Plaintiff's view on

12 compensable time, as well as his ability to represent a class of P&M employees given, what it

13 believed to be, the individualized nature of Plaintiff's (and other P&M employees') work

14 experience with Defendant.

15      **B.    DISCOVERY**

16      This class-action settlement is the result of protracted, arm's-length negotiations based on a

17 comprehensive investigation of the facts and law, including the exchange of significant amounts of

18 information pursuant to formal and informal discovery. Class Counsel and counsel for Defendant

19 have engaged in extensive discovery, including exchanging 30,637 pages of documents regarding

20

---

21  monogoggles, rubber boots. The testimony was mixed regarding the location where employees store this equipment
22  and regarding the employees' pre- and post-shift routines, a point that Defendant will undoubtedly raise in opposition
    to any certification motion.

23  [6] Whether the six minute rule is a company-wide policy and/or practice is in dispute. While Plaintiff obtained
24  significant testimony supporting this policy and practice, Defendant produced declarations of other P&M employees,
    supervisors and witnesses, some of whom claim that such a policy and/or practice does not exist on a plant-wide basis.

25  [7] Defendant provides paid meal periods to its hourly employees. Deposition of William Swenson, Volume II
26  ("Swenson Dep. II") at 288:8-288:14 (Attached as **Exhibit 3** to Cottrell Decl.). For purposes of this claim, the only
    issue is unpaid premium pay for missed breaks. Pursuant to Cal. Labor Code Section 226.7(b), an employer must pay
    an employee one hour of pay at the employee's regular rate of pay for each workday that a break was not provided.

27

28  PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
    APPROVAL OF CLASS ACTION SETTLEMENT
    *Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

the claims at issue, including policies and procedures regarding timekeeping, overtime, compensation, and payroll, personnel files, and time and pay records for the entire class. The parties deposed twenty individuals, including the deposition of named Plaintiff Carl Cordy, Defendant's corporate designees and management employees, and putative subclass members. Declaration of Carolyn Cottrell in Support of Plaintiff's Amended Motion for Preliminary Approval ("Cottrell Decl.") at ¶ 8. Class Counsel interviewed dozens of putative subclass members regarding their work experiences while in the employ of Defendant. Class Counsel made a thorough study of the legal principles applicable to the claims asserted against Defendants. Cottrell Decl. at ¶ 11. Additionally, Defendant produced approximately 40 declarations of putative subclass members, supervisors and managers who primarily supported its defenses.

## C.   ANALYSIS OF CLASS-WIDE DAMAGES AND SETTLEMENT NEGOTIATIONS

Class Counsel based their damages analysis and settlement negotiations on: (a) interviews conducted of Settlement Subclass Members in anticipation of the class certification motion and mediation, (b)  information provided by Defendant regarding the number of Settlement Subclass Members, both currents and formers, and their average hourly rate of pay , (c) deposition testimony and information provided by Settlement Subclass Members in declarations regarding the merits of the case and certification; and (d) the timekeeping and payroll records of the Settlement Subclass Members. Cottrell Decl. at ¶ 12. Based on the number of Settlement Subclass Members, the amount of time they allegedly worked without pay, the number of meal and rest periods allegedly missed, and the itemized wage statement and waiting time penalties, Class Counsel created a rough estimate of the damages that would result if Plaintiff and the Settlement Subclass Members were to prevail on all of Plaintiff's claims at trial. The analysis also assumed that class certification would be granted for all of Plaintiff's claims.

More specifically, Class Counsel calculated damages for 681 hourly P&M employees that worked for Defendant during the four-year statutory period.[8]  Furthermore, Settlement Subclass Members' average hourly rate of $21.54 was determined by taking the average of the overall hourly rates in the collective bargaining agreement during the statutory period.

### 1. Plaintiff's claim that Settlement Subclass Members worked without pay

The thrust of this claim is that Defendant required the Settlement Subclass Members to swipe in at least six minutes prior to their scheduled shifts ("the six minute rule").  While there was significant testimony supporting the fact that the six minute rule existed on a near plant-wide basis, there was mixed testimony regarding what work activities occurred outside of the scheduled shifts for which the Settlement Subclass Members were not paid.  There was also mixed testimony as to whether Defendant also required the Settlement Subclass Members to swipe out at least 6 minutes *after* the end of their scheduled shifts.  With regard to this claim, Class Counsel performed two different damages calculations.   The first calculation assumed that every employee worked off-the-clock 12 minutes per day.  With the  six minute rule calculation,  12 minutes (to account for six minutes both pre- and post-shift) were added to Settlement Subclass Members' hours for each shift worked (adjusted for overtime) during the class period. This amount totaled $3,082,923.27 in damages.[9]

As a second calculation, Class Counsel used the swipe data for the Settlement Subclass Members to estimate the average amount of time in the facility outside of the scheduled work shifts.   The average time from swipe to swipe, namely time spent at the facility outside of the scheduled work shifts was .46 hours.[10]  Accordingly .46 additional hours were added to each

---

[8] At the time Class Counsel calculated class-wide damages, the information they had received from Defendant is that there were 681 members.  Since the parties entered into a settlement, this number has increased slightly to 699 total members.  Ortman Decl. at ¶ 5.

[9] This number was obtained by multiplying the total number of shifts worked by all Settlement Subclass Members during the class period by .12 (totaling 143, 125.50 hours) and further multiplying the sum by the average hourly rate, $21.54.

[10] The testimony on this issue was mixed.  Some employees testified that they arrived early to gather their equipment while others testified that they arrived early to eat a meal and socialize.  While off-the-clock claims are notoriously

7

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1   Settlement Subclass Members' hours for every shift worked (adjusted for overtime).  This amount

2   totaled $7,090,723.52[11] in damages.

3       2.      **Plaintiff's claim for Premium Pay for Missed Meal and Rest Periods**

4       Defendant had an obligation to pay one hour of pay, at the regular hourly rate, to each

5   employee who missed a meal or rest period.  It is undisputed that prior to May 31, 2011, Defendant

6   did not pay the Settlement Subclass Members premium pay for missed meal and rest periods.  The

7   testimony about the frequency with which Settlement Subclass Members missed meal and rest

8   periods varied significantly depending on department and position.

9       Accordingly, Class Counsel conducted two calculations to account for damages owed for

10  missed meal and rest periods.  The first calculation which applied to all Settlement Subclass

11  Members, assumed that they missed meal periods at the same rate that they missed meal periods

12  after Defendant instituted its penalty payment policy in 2011.  The amount paid in penalties after

13  2011 was extrapolated across the class period for a total of $43,097.[12]

14      Class Counsel conducted a second calculation for those Settlement Subclass Members that

15  worked in "continual presence" positions.  According to Defendant, 19 positions at the plant

16  require the employees' near continuous presence at their workstations to monitor various systems.

17

18

19  difficult to certify due to the lack of documentation and varied testimony regarding how people spend their time, the mixed testimony regarding activities that the employees perform outside of their scheduled shifts will complicate any attempt to certify this off-the-clock claim.  *See, e.g., Koike v. Starbucks Corp.,* 378 Fed. Appx. 659, 661 (9th Cir.

20  2010) ("[t]he district court did not abuse its discretion in finding that individualized factual determinations are required to determine whether class members did in fact engage in off-the-clock work and whether [the employer] had actual or

21  constructive knowledge of off-the-clock work performed"); *see also Reed v. County of Orange*, 266 F.R.D. 446, 450 (C.D. Cal. 2010) (finding that denial of class certification is "appropriate where plaintiffs are subject to varying work

22  conditions in different work locations or under different supervisors"); *Washington v. Joe's Crab Shack* , 271 F.R.D. 629, 640  (N.D. Cal. 2010) (denying class certification for off-the -clock and meal break claims because common

23  issues did not predominate); *Smith v. T-Mobile USA, Inc* ., 2007 WL 2385131, *8 (C.D. Cal. Aug. 15, 2007) (denying conditional certification of off the clock claim).

24  [11] This number was obtained by multiplying the total number of shifts worked by all Settlement Subclass Members

25  during the class period by .46 (totaling 329,188.65 hours) and further multiplying the sum by the average hourly rate $21.54.

26  [12] Testimony varied regarding whether P&M employees in general missed meal and rest periods.  According to the

27  evidence presented thus far, the practices regarding breaks varied depending on the department, thereby posing a potential challenge for certification of this claim as to all of the P&M employees.

8

28

Plaintiff Cordy, a Lead Operator in the Coil Storage Area ("CSA"), worked in one such position. For persons that worked in these continual presence positions, the rate of missed meal and rest periods was significantly higher than the other employees.   Furthermore, the testimony was consistent, and supports that there was a common practice, that continual presence employees occasionally missed meal and rest periods.  Deposition of Frederick Ripoli ("Ripoli Dep.") at 20:8-21:9 (Attached as **Exhibit 4** to Cottrell Decl.). However, Defendant has asserted and provided some testimony to support its assertion, that various measures were undertaken to provide these continual presence employees the opportunity to take some breaks, including line stoppages and relief employees.  Deposition of William Swenson Vol. II ("Swenson Dep. II") at 325:4-325:18 (Attached as **Exhibit 3** to Cottrell Decl.).

To calculate damages for missed meal and rest periods for the continual presence employees, Class Counsel assumed two missed breaks per day for each continual presence employee.  This equated to two hours of premium pay per day at the average hourly rate ($21.54) for each of the continual presence shifts per week (83).  Continual presence employees' damages, assuming they missed all meal and rest periods during the class period, totaled $929,666.40.

### 3.     Plaintiff's Penalty Claims.

Class Counsel also calculated waiting time penalties pursuant to Cal. Labor Code 203 for the 252 individuals who left their employment with Defendant within the 3-year limitations period.[13]   The gist of this penalty claim is that since the employees were not paid properly during their employment, Defendant owed them additional monies when their employment ended. The penalties were calculated pursuant to the statutory requirements, namely, eight hours a day at $21.54 per hour for 30 days for each of the former employees.  Waiting time penalties totaled $1,302,739.20.

---

[13] Defendant has recently informed us that only 170 individuals left their employment during this time.

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1    Finally, Class Counsel calculated penalties for Defendant's violation of Cal. Labor Code

2  226 for failure to provide itemized wage statements.  Specifically, for those days when the

3  employees worked in multiple positions and received multiple hourly rates of pay, Defendant

4  failed to provide this information in the wage statements as required.  To start off the negotiations,

5  Class Counsel assumed maximum statutory penalties of $4,000 for every employee that worked

6  within the one-year limitations period.[14]  These penalties totaled $4,519,502.  This calculation did

7  not take into account the fact that some of the members of this subclass did not work in multiple

8  positions and did not receive multiple hourly rates of pay, which would reduce the total recovery.

9       **4.    Plaintiff's Total Damages and Percentage Recovered Under This Settlement**

10

11    When adding simple interest[15]  and the aforementioned penalties, under the two scenarios

12  explained above, class-wide damages totaled $8,373,156.69 based on the six minute rule.  Under

13  the average swipe calculation, damages, penalties and interest totaled $13,382,905. This analysis

14  provided a starting point for settlement negotiations.  The final amount being disbursed to the

15  Settlement Subclass Members, namely $2,170,658, is approximately 26% (assuming the six

16  minute rule calculation) and 16% (assuming average swipe calculations) of the total damages,

17  penalties and interest attainable in this case.  The final settlement amount takes into account the

18  substantial risks inherent in any class action wage-and-hour case, as well as the specific defenses

19  asserted by Defendant, many of which were supported by the declarations gathered and produced

20  by Defendant.  *Id.*

21

22

23

---

24  [14] California Labor Code § 226(e) provides: An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty

25  dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is

26  entitled to an award of costs and reasonable attorney's fees.

[15] Under the six minute rule scenario simple interest totaled $770,730.82. Under the average swipe data scenario

27  simple interest totaled $1,772,680.88.

28  PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

### D.    MEDIATION

The parties mediated this dispute on March 26, 2013, before Jeffrey Krivis, a respected and experienced wage and hour mediator. After the mediation, counsel for the parties continued their arm's-length negotiations and eventually reached a class-wide settlement subject to the Court's approval.  Cottrell Decl. at ¶ 10.

## III.    CLASS ACTION SETTLEMENT APPROVAL PROCEDURE

A class action may not be dismissed, compromised, or settled without the approval of the court. *See* FRCP 23(e). There are typically three distinct steps for approval of class-action settlements:

1.    Preliminary approval of the proposed settlement after submission of a written motion for preliminary approval, the proposed class-action settlement, and the proposed Class Notice;

2.    Mailing the notice of the settlement to all Settlement Subclass Members; and

3.    A final settlement approval hearing where Settlement Subclass Members may be heard regarding objections to the settlement, and where evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

This procedure commonly is used for approval of class actions under federal law. *See* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS, §1 1 :24, *et seq.* (4th Ed. 2002); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.63 (2004) (endorsing the three-step process as a way to safeguard Settlement Subclass Members' procedural due process rights and enable the court to fulfill its role as the guardian of the interests of the class).

With this motion, Plaintiff requests that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement Agreement. The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within the "range of reasonableness" and, thus, whether notice to the Subclasses of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See*

1   CONTE & NEWBERG at § 11:26. As set out in more detail below, the settlement herein is based

2   on arm's-length negotiations and the evaluation of extensive informal and formal discovery.

3   Furthermore, the settlement provides all the required due process protections to the class and

4   substantial monetary recovery. In sum, the proposed settlement is fair, reasonable, and adequate.

5   **IV.   TERMS OF THE SETTLEMENT**

6        **A.   BASIC TERMS**

7        The Settlement Agreement provides for a Gross Settlement Amount of $3,500,000. The

8   Gross Settlement Amount shall be used to satisfy (i) settlement awards to the Settlement Subclass

9   Members; (ii) claims-administration fees[16]; (iii) enhancement payments for the Class

10  Representatives[17]; (iv) payment of $25,000 to the LWDA; (v) $125,000 contribution to the Hold-

11  Back Fund for payment of disputed and late claims and unanticipated expenses, the remainder of

12  which will be applied to Defendant's share of the payroll taxes on the settlement awards; and (vi)

13  attorneys' fees and costs.[18]

14       Furthermore, the claims being released in this settlement are limited to only those claims

15  that arise from the allegations contained in Plaintiff's Complaint. In a separate motion under Fed

16  R. Civ. Proc. 23(h), Class Counsel will seek fees of no more than thirty-three percent (33%) of the

17  Gross Settlement Amount, and reimbursement for litigation related costs, currently estimated to be

18  $53,455. [19]

19       **B.   CALCULATION OF SETTLEMENT AWARDS FOR PARTICIPATING
             SETTLEMENT SUBCLASS MEMBERS**

20

21       The net amount to be paid to Settlement Subclass Members is estimated to be $2,170,658.

22

---

23  [16] The cost of settlement administration is estimated to be $19,621. Cottrell Decl. at ¶ 41.

24  [17] The Settlement Agreement and Addendum provide that Class Counsel may request an enhancement award of $8,000
    for named Plaintiff and Class Representative, Carl Cordy and $1,500 for proposed Class Representative, Donald Jones.
25  *See* Addendum, **Exhibit B**.

26  [18] Fees not to exceed $1,155,000 (33% of the total Gross Settlement Amount) and costs, which currently total $53,455.

27  [19] Class Counsel's collective lodestar is nearly $1,000,000. Cottrell Decl. at ¶ 39; Brown Decl. at ¶12.

                                                    12
28

This amount does not include the Hold-Back Fund of $125,000 withheld for the payment of disputed and late claims, the residual of which will be applied to the employer's share of payroll taxes on the awards.  Cottrell Decl. at ¶ 24.

### 1.     The Parties' Efforts to Ensure Fairness to all Settlement Subclass Members

In an effort to ensure fairness to all Settlement Subclass Members, the parties have agreed on an allocation and distribution formula for purposes of calculating settlement awards that is tailored to each of the claims and Subclass(es) to which each member belongs.  Cottrell Decl. at ¶ 25.

### 2.     The Parties' Allocation of the Settlement Proceeds

Pursuant to the parties' proposed allocation, $1,122,000 of the Net Settlement Amount is allocated to the Itemized Wage Statement Subclass; $175,000 is allocated to the Waiting Time Penalty Subclass; $185,933 is allocated to the Continual Presence Subclass; and $687,725 is allocated to the Unpaid Time Worked Subclass.[20]  This allocation was determined based on consideration of facts and information obtained during discovery and the risks attendant with certification and proof of liability.  Cottrell Decl. at ¶ 26.

### 3.     The Distribution Formula for Calculation of Settlement Awards for Members of Each of the Subclasses

The distribution formula for each subclass varies depending on the nature of the claim.  Furthermore, in the event that Settlement Subclass Members choose not to participate in the settlement, the funds will be redistributed pro rata to those members of the subclass who do participate, thus making the average payout for participating Settlement Subclass Members even higher.  Cottrell Decl. at ¶ 27.

The itemized wage statement claim is triggered by the issuance of a wage statement at the end of each pay period, regardless of how many shifts worked.  Accordingly, settlement awards for

---

[20] At this time, these numbers are approximations.  Once the settlement is preliminarily approved, the actual distribution and allocation will be determined.

13

the 638 members of the Itemized Wage Statement Subclass will be determined solely based on pay period actually worked, and for which a wage statement was issued, during the relevant time period, February 2, 2011 through April 30, 2013. [21]   Based on the preliminary calculations, the average payment for each member of this subclass is $1,759.  The amount allocated to this Subclass is estimated to be 50% of full value.  Cottrell Decl. at ¶ 28.

Settlement awards will be determined based on a flat rate, even distribution for each of the 170 members of the Waiting Time Penalty Subclass, those individuals who either resigned or were terminated by Defendant from February 2, 2009 through the present.  Since waiting time penalties are capped at 30 days of pay and all P&M employees are paid according to the union pay scale, each of the 170 members of this Subclass will receive a flat rate of $1,029.   This rate is approximately 20% of the full value of this claim.  Cottrell Decl. at ¶ 29.

Settlement awards for the 122 members of the Continual Presence Subclass will be distributed based on the number of hours worked during the relevant time period, February 2, 2008 through the present.  Using hours worked as the measure for distribution is fair because hours worked is the trigger for breaks.  Typically, the more hours one works, the more breaks one should receive.  The average award per subclass member is $1,524.  The allocation for this subclass is estimated to be 20% of full value.  Cottrell Decl. at ¶ 30.

Finally, with respect to the Unpaid Time Worked Subclass, Settlement awards for the 699 members will be distributed based on the number of hours worked during the relevant time period, February 2, 2008 through the present.  The average award per subclass member is $984.  The allocation for this subclass is an estimated to be 20% of full value.  Cottrell Decl. at ¶ 31.

## C.    SCOPE OF RELEASE AND FINAL JUDGMENT

The proposed settlement releases all claims that were alleged in this matter, or could have been alleged in this matter based on the facts alleged in the pleadings, including specifically claims

---

[21] This is the date that itemized wage statements for the P&M employees were made compliant with the requirements of Cal. Labor Code Section 226.  Ortman Decl. at ¶ 4.

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

pursuant to California Labor Code §§ 201-203, 204, 226, 226.7, 510, 512, 1194, 2698 *et seq.*, California Business & Professions Code §§ 17200 *et seq.*, Industrial Welfare Commission Order 1-2001 and 17-2001, the Employment Retirement Income Security Act of 1947, any California or federal law relating to the failure to pay wages, failure to pay overtime compensation, failure to provide itemized wage statements, failure to provide or ensure meal and rest periods, and any claims for penalties, wages, damages, attorneys' fees, interest, or costs predicated on the foregoing claims.

### D.    PAYMENTS TO THE STATE

The parties have designated $33,333 of the Gross Settlement Amount to resolve PAGA claims (the "PAGA Allocation"). Thus, under Labor Code Section 2699(i), 75%, or $25,000, of the penalty payment will be paid to the California Labor and Workforce Development Agency ("LWDA"), and the remaining $8,333 will be added to the Net Settlement Amount for distribution to members of all of the subclasses. *See* Addendum, **Exhibit B.**[22]

Prior to the filing of the Complaint, on December 21, 2011, Plaintiff notified the LWDA that he intended to seek civil penalties pursuant to the PAGA in this action. Cottrell Decl. at ¶ 6. On January 24, 2012, the LWDA notified the parties that it does not intend to investigate Plaintiff Cordy's claims. *Id.* Accordingly, Plaintiff has satisfied the notice requirements of Labor Code §

---

[22] Plaintiff's Sixth and Seventh Claims seek penalties under the Labor California Private Attorneys General Act of 2004, California Labor Code section 2699(a)("PAGA"). Labor Code section 2699 provides a private right of recovery of statutory penalties for any violation of the Labor Code, except those for which a civil penalty is specifically provided. Labor Code Section 2699(f). In other words, PAGA penalties apply when an alleged Labor Code violation does not already have a penalty provision. *Id.*; *Caliber Bodyworks, Inc. v. Sup. Ct. (Herrera)*, 134 Cal.App.4th 365, 377 (2005). Notably, because Labor Code §§ 1194.2 (liquidated damages), 204 (semi-monthly payments), 203 (waiting time penalties), and 226 (failure to provide itemized wage statements) already incorporate their own penalty provisions, an award of additional PAGA penalties is uncertain. *See* Cal. Lab. Code § 2699(f); *see also Guifi Li v. A Perfect Day Franchise Inc.*, 2012 WL 2236752 at *17 (N.D. Cal. 2012) (denying the recovery of PAGA penalties in addition to Section 226; "the Court is aware of no authority that would permit double recovery of essentially the same penalties."). Moreover, even assuming Plaintiff's remaining claims qualify for PAGA penalties, any such award is not automatic. The court may award less than the maximum penalty authorized if, under the facts and circumstances of the case, a greater amount would be "unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2); *see also Thurman v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112, 1135-6 (2012)(reducing PAGA penalties) Given the number of statutory claims providing for their own penalties and the impropriety of duplicative penalties, the Parties' agreed that $33,333 of the Settlement award shall be attributed to PAGA penalties.

15

2699.6(a)(1).  The LWDA has requested that it be provided a copy of the settlement agreement, once it is approved by the Court. *Id.* The parties will comply with the LWDA's request, once the settlement agreement is approved. *Id.*

### E.    ADMINISTRATION OF SETTLEMENT

In the Settlement Agreement, the parties have agreed to use Heffler to administer the settlement. Defendant will provide Heffler with a list of Settlement Subclass Member names and contact information within fifteen (15) days of preliminary approval. Heffler has twenty (20) business days after receiving the list of Settlement Subclass Members to calculate the estimated settlement award for each Settlement Subclass Member, and to mail the Class Notice (attached as **Exhibit C**) to the Settlement Subclass Members via first-class mail. Before mailing, Heffler will update the contact information using various databases, including the National Change of Address search provided by the United States Postal Service. Heffler will perform address searches on returned mail and will re-mail the Class Notice to an updated address within fifteen (15) days of receipt of the returned mail.  Should any Class Notices be returned as undeliverable, Heffler will re-mail them to the forwarding address attached or, if no forwarding address is attached, to an updated address obtained through use of the databases described above within five (5) business days after Heffler receives notice that the Class Notice was undeliverable.  In an effort to obtain current addresses, Heffler shall also call last-known telephone numbers of Settlement Subclass Members for whom Class Notices are returned as non-deliverable.

Settlement Subclass Members will have forty-five (45) days from the date the Class Notices are mailed to postmark requests for exclusion (also referred to as "opt-outs") or objections to the settlement.   The opt-outs must be completed in their entirety in accordance with all instructions set forth in the Class Notice.  Settlement Subclass Members who opt-out will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement.

All Settlement Subclass Members who have not requested exclusion will receive a payment from the Net Settlement Fund.  If a Settlement Subclass Member submits an objection to the

1    settlement award, that objection will be addressed by Heffler by reference to the records of hours

2    worked provided by Defendant. If the objection cannot be resolved by reference to the records,

3    both parties must agree to a proposed resolution. An amended Class Notice will be sent to the

4    Class Member. The Class Member may accept the proposed resolution or opt-out. A $125,000

5    Hold-Back Fund will pay Settlement Subclass Members' disputed and/or late claims.

6    **F.    UNCLAIMED FUNDS**

7    Settlement Award checks that remain un-cashed after 180 days, shall be distributed to

8    Legal Aid Society-Employment Law Center ("LAS-ELC") as the *cy pres* recipient.[23]   A *cy pres*

9    distribution is reasonable where it "account[s] for the nature of the plaintiffs' lawsuit, the

10   objectives of the underlying statutes, and the interests of the silent Settlement Subclass Members

11   ...." *In re Netflix Privacy Litig.,* 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18,

12   2013)(quoting *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011).   Based in the San

13   Francisco Bay Area, as are nearly all of the Settlement Subclass Members, LAS-ELC is a non-

14   profit, legal services organization assisting California's low-income working families.  Among

15   other employment-related services, LAS-ELC has a wage and hour program which is designed to

16   educate workers about their wage-and-hour rights by providing self-help guides, presentations,

17   legal advice, and legal representation.[24]

18   **V.    THE COURT SHOULD GRAND PRELIMINARY APPROVAL OF THE CLASS
         ACTION SETTLEMENT AND SCHEDULE A FAIRNESS HEARING**
19

20   **A.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

21   FRCP 23(e) requires judicial approval for any compromise of claims brought on a class-

22   wide basis. Although approval of class settlements lies within the discretion of the Court, *see*

23   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), this discretion is constrained by

24   the "principle of preference" favoring and encouraging settlements in appropriate cases. *See, e.g.,*

---

[23] Defendant has agreed to forego its initial request that half of the monies be distributed to the Juvenile Diabetes Research Fund and accepts Plaintiff's chosen *cy pres* as the sole beneficiary of the proceeds from un-cashed checks.

[24] *See* http://www.las-elc.org/wage-hour.

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

*Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999). A court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon*, 150 F.3d at 1026; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

FRCP 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to Settlement Subclass Members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (*citing* MANUAL FOR COMPLEX LITIG. at § 30.41). Final approval is warranted where the settlement is "fundamentally fair, adequate, and reasonable." Id. (*quoting* 5 MOORE FEDERAL PRACTICE, § 23.85 (Matthew Bender 3d ed.)).

"The preliminary determination establishes an initial presumption of fairness." *In re General Motors Corp.*, 55 F.3d 768, 784 (3d Cir. 1995). Preliminary approval of a settlement and notice to the proposed class is appropriate:

> [i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval[.]

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (*quoting Schwartz v. Dallas Cowboys Football Club*, Ltd., 157 F.Supp.2d 561, 570, n.12 (E.D. Pa. 2001)); *see also* MANUAL FOR COMPLEX LITIG. at § 30.41 (preliminary approval is warranted "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval"); *Hanlon*, 150 F.3d at 1027 (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely duration of further litigation," "the extent of

1  discovery completed and the stage of the proceedings," and "the amount offered in settlement").

2  The opinion of experienced counsel supporting the settlement is entitled to considerable weight in

3  a court's evaluation of a proposed settlement. *See In re Michael Milken & Assoc. Sec. Litig.*, 150

4  F.R.D. 57, 66 (S.D.N.Y. 1993); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983)

5  ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.

6  Lawyers know their strengths and they know where the bones are buried.").

7            1.      **The Terms of the Proposed Settlement are Fair, Reasonable and**
8                    **Adequate**

9            For preliminary approval, a court makes an initial evaluation of the fairness,

10  reasonableness, and adequacy of the proposed settlement on the basis of information already

11  known, supplemented as necessary by briefs, motions, or information presented by the settling

12  parties. *See* MANUAL FOR COMPLEX LITIG. at § 21.632. A court must ensure that "the

13  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

14  parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

15  *Hanlon*, 150 F.3d at 1027.[25]

16            In evaluating the fairness of a proposed settlement, courts compare the settlement amount

17  with the estimated maximum damages recoverable in a successful litigation.  *In re Mego Fin.*

18  *Corp. Secs. Litig.,* 213 F.3d 454 at 459.  Courts routinely approve settlements that provide a

19  fraction of the maximum potential recovery.  *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n*

20  *of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982) ("the very essence of a settlement is

21  compromise, 'a yielding of absolute and an abandoning of highest hopes.'")  Courts have held that

22  recovery of less than the maximum estimate of damages constitutes a result that is well within a

23  reasonable range when compared with other class settlements.  *See, e.g.*, *Rodriguez v. West Publ'g*

24  *Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving settlement representing

25

26
    _____

27  [25] The Court has determined that there is no basis for the Court to conclude that there has been collusion.  Doc. No. 52.
                                                            19

28  PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
        APPROVAL OF CLASS ACTION SETTLEMENT
    *Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

30% of damages estimated by plaintiffs' expert); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) ( "Damages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe'" and "[t]he settlement amount of $44.5 million represents more than 33% of the maximum possible recovery, a very reasonable settlement when compared with recovery percentages in other class actions" [citations omitted]); *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving settlement that provided for only about 20% of damages as being "well within the range of reasonableness"); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. 1979) (collecting cases in which settlements with a value of 1% to 8% of the estimate total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) ("Given these risks alone, we would find a recovery of 17% of the amount of 'guesstimated' alleged damages (and probably a much higher percentage of the true figure if it could be known) and about one-third of the damages suffered by claim-filing Settlement Subclass Members to be within the range of reasonableness."); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla. 1972) (approving class settlement that was 8% of estimated total class damages).

A preliminary review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. The Net Settlement Amount of $2,170,658, derived from a Gross Settlement Amount of $3,500,000, will result in fair and just relief to all Settlement Subclass Members. Cottrell Decl. at ¶¶ 24, 33 .  Payments to the Settlement Subclass Members are roughly 26% the total damages, penalties and interest attainable in this case.[26]  The result is not only well within the reasonable standard, but Class Counsel believe quite reasonable when considering the difficulty and risks presented by pursuing further litigation.  Cottrell Decl. at ¶ 32.   Furthermore, the final settlement amount takes into account the substantial risks inherent in any class action wage-and-

---

[26] This assumes damages are based on the six minute rule calculation.  Assuming the swipe to swipe calculation, the settlement is an estimated 16% of total damages, penalties and interest.

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

hour case, as well as the specific defenses asserted by Defendant, many of which were supported by the declarations gathered and produced by Defendant. *Id.*

### 2. To Further Ensure Fairness, The Parties Have Agreed to Settlement Subclasses, and Distribution of the Settlement Proceeds Has Been Specifically Tailored to Each Claim

In an effort to further ensure fairness for the employees, the parties have agreed to allocate the settlement proceeds amongst various subclasses that track each of the substantive violations and some of the penalty claims, including the limitations period for each claims. The allocation was made based on Class Counsel's assessment of the risk of continued litigation and risk on certification and merits. Once allocating the proceeds the parties further agreed on distribution formulas specifically tailored to each claim, and each claims limitations period, to further ensure that employees are compensated accordingly. While this may result in some employees only participating in some of the subclasses, and perhaps receiving lower settlement awards, this is ultimately more equitable.

Furthermore, a class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.* 706 F.2d 1144, 1148 (11th Cir.1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D.Ill.2011); *In re MetLife Demutualization Litigation,* 689 F.Supp.2d 297, 344 (E.D.N.Y.2010); *In re Excess Value Insurance Coverage Litigation,* 2004 WL 1724980 at *14 (S.D.N.Y.2004). Rather, although disparities in the treatment of class members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979–80, 2011 WL 2204584 at *42. *See also In re Mego Financial Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir.2000) (approving a distribution plan that left certain class members without recovery); *Officers for Justice,* 688 F.2d at 625 (explaining that the decision to approve a class action settlement "is nothing more than an amalgam of delicate balancing, gross approximations and rough justice.").

3.     **Contribution of the Monies That Remain in the Hold-Back Fund to Defendant's Share of the Payroll Taxes**

As noted above, the parties engaged in lengthy, arms-length negotiations with a well-known mediator who specializes in resolving wage and hour class actions.  Like all class actions, the parties spent extensive time negotiating over the settlement amount to be paid to the Settlement Subclass Members and to counsel.  Through this process, the parties agreed that the sum total payment would be $3,500,000.  In addition, Defendant expects its tax burden on the settlement payments to exceed $280,000 given recent changes to the tax code that changed the tax rate from approximately 9% to 19%.  Declaration of Francis Ortman III ("Ortman Decl.") at ¶ 6. Recognizing that additional burden, the parties agreed to set aside a tiny fraction of the settlement amount -- $125,000 or 3.57% of the total amount – as a Hold-Back Fund for payment of disputed and late claims by Settlement Subclass Members.  The parties further agreed that if any undistributed funds remain after 120 days of the notice mailing, the remainder from the $125,000 fund would be returned to Defendant to help defray the additional tax burden created by the settlement.

Similar provisions have been approved by courts in other wage and hour class action settlements.  *See Minor v. FedEx Office and Print Services, Inc.*, 2013 WL 503268 (N.D. Cal. 2013)(approving class action settlement of wage/hour claims where employer's share of payroll taxes could (to the extent available) be paid from a settlement fund based on a predetermined formula).  Recently, a district court went so far as to approve a settlement where the employer's side payroll taxes were paid directly out of the gross settlement fund before the "claims made" process.  *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)(approving class action settlement where employer's side payroll taxes were paid directly out of gross settlement fund).  Finally, even more traditional reversions have been approved in other class actions involving the same claims.  *See Navarro v. Servisair*, 2010 WL 1729538 (N.D. Cal. 2010)(approving a $900,000 class action settlement of wage and hour claims that allowed the

1    defendant to retain approximately $160,000 through reversion regardless of class participation).

2    Based on the foregoing, the parties' agreement to allow a small percentage of unclaimed funds to

3    offset Defendant's ample payroll tax burden for the settlement is appropriate.

4          Moreover, while the residual here will be used for the employer's share of payroll taxes,

5    Courts have held that even a true reversion, such as in the claims made process, is not inherently

6    impermissible in the class action settlement context.  As the Honorable Edward M. Chen recently

7    stated:

8          The Court wishes to make clear, however, that it is not holding that a claims
9          process is inherently unfair or that the parties' inclusion of the reversion provision
           as a term of the Settlement Agreement is *per se* unreasonable. As the parties
10         correctly point out, courts routinely approve settlement agreements that include
           such provisions.  *See, e.g., Navarro v. Servisair,* 2010 WL 1729538, at *1
11         (N.D.Cal. April 27, 2010) (granting final approval of settlement pursuant to which
           the "[d]efendant will retain a substantial portion of the common fund through
12         reversion); *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 474936, at *8 (N.D.Cal.
           Jan.26, 2007) (overruling objection to final approval of the settlement based on
13         reverter); *see also* Herbert Newberg & Alba Conte, 3 Newberg on Class Actions §
           10:15 (4th ed.2010). However, the issue is not necessarily the inclusion of such
14         provisions per se, but how these provisions *in operation* affects the value of the
           settlement as compared to the maximum verdict Plaintiff could obtain at trial—
15         one important factor in judging the fairness and adequacy of the settlement.

16

17   *Harris v. Vector Mktg. Corp.,* 2011 WL 1627973, at *13 (N.D. Cal. Apr. 29, 2011) (emphasis

18   added).

19         Finally, Courts have held that there is nothing inherently unfair or inadequate about the

20   reversion of un-awarded attorneys' fees or unclaimed settlement funds.  *In re Microsoft I-V Cases*,

21   135 Cal. App. 4th 706, 721 (2006) ("The analysis [of legislative history of Cal. Code Civ. Proc. §

22   384] additionally recognized that a court approved settlement could properly include a 'reversion

23   of ... funds to the defendant,' such as the one-third reversion provided in the settlement agreement

24   in this case."); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 474936, at *8 ("The Court likewise finds

25   unpersuasive D'Aria's contention that plaintiffs' counsel inadequately represented the class by

26   agreeing to a settlement under which any unclaimed settlement funds, or the amount by which

27

28
                                              23
─────────────────────────────────────────────────────────
     PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
                  APPROVAL OF CLASS ACTION SETTLEMENT
           *Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1  attorneys' fees are reduced, will revert to UBS. D'Aria cites no authority holding improper a

2  settlement providing for such reversion of unclaimed or un-awarded funds; indeed, there is

3  authority suggesting to the contrary.").

4  **4.    The Parties Reached a Settlement After Extensive Investigation, Discovery, and Analysis of the Class Claims**

5

6  The proposed Settlement was reached after mediation and extensive arm's-length

7  negotiations.  As described above, prior to the mediation, Class Counsel conducted a significant

8  investigation into the claims and defenses and the applicable law. This investigation included

9  dozens of interviews of Settlement Subclass Members, the exchange and analysis of 30,637 pages

10  of documents, Furthermore, Class Counsel took the deposition of nearly 20 witnesses, including

11  corporate designees, upper management personnel, line supervisors, and Settlement Subclass

12  Members that supported the defense.   Cottrell Decl. at ¶¶ 7, 8; Declaration of Scott Brown in

13  Support of Plaintiff's Motion for Preliminary Approval ("Brown Decl.") at ¶ 9. The settlement

14  amount is based on an extensive review of the facts and law and a consideration of the legal

15  arguments, as well as all of the evidence obtained during the course of this litigation.

16  In reaching the settlement, Class Counsel relied on their substantial litigation experience in

17  similar wage and hour class actions, and a thorough analysis of the legal and factual issues

18  presented in this case.   Cottrell Decl.  Class Counsel's liability and damages evaluation was

19  premised on a careful and extensive analysis of the effects of Defendant's compensation policies

20  and practices on Settlement Subclass Members' pay.

21  The settlement negotiations were facilitated and supervised by Jeffrey Krivis, an

22  experienced mediator with expertise in the resolution of wage-and-hour disputes. Cottrell Decl. at

23  ¶ 10.

24  **5.    Litigation of this Action Not Only Would Delay Recovery, but Would be Expensive, Time Consuming, and Would Involve Substantial Risk**

25

26  If this case were to go to trial as a class action, Class Counsel estimates that fees and costs

27  would exceed $2,000,000. Cottrell Decl. at ¶ 36. Litigating the class action claims would require

28

24

substantial additional preparation and discovery. It would require depositions of experts, the

presentation of percipient and expert witnesses at trial, as well as the consideration, preparation,

and presentation of voluminous documentary evidence and the preparation and analysis of expert

reports. Recovery of the damages and penalties previously referenced would also require complete

success and certification of all of Plaintiff's claims, a questionable feat in light of recent

developments in wage and hour and class action law. In contrast, resolving this case by means of

an early settlement will yield a prompt, certain, and very substantial recovery for the Settlement

Subclass Members. Such a result will benefit the parties and the court system. *Id.*

> **6.      The Proposed Settlement is Well Within the Range of Reasonableness**

The Settlement Agreement creates a Net Settlement Amount estimated to be worth

$2,170,658 for the 699 total members of the Settlement Subclasses, exclusive of attorneys' fees and

costs, the Hold-Back Fund, administrative costs, the enhancement award to the named Plaintiff,

and payment to the LWDA. As previously discussed, **the average award to each member of the**

**subclasses** —assuming 100% participation in the settlement—will be as follows:

| | |
|---|---|
| Itemized Wage Statement Penalty Subclass | $1,759 |
| Waiting Time Penalty Subclass | $1,029 |
| Continual Presence Subclass | $1,524 |
| Unpaid Time Worked Subclass | $984 |

If fewer than 100% of Settlement Subclass Members participate, each Settlement Subclass

Member's award will be even higher.   Cottrell Decl. at ¶ 27.  Assuming membership in all

subclasses, on average one could expect to receive $5,300.  This is a substantial recovery that

easily falls within the range of reasonableness for settlement approval. *See, e.g., In re Mego Fin.*

*Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement

amounting to only a fraction of the potential recovery does not per se render the settlement

inadequate or unfair.") (*quoting Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th

Cir. 1982)).  It is equally well-settled that a proposed settlement is not to be measured against a

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

hypothetical ideal result that might have been achieved. *See, e.g., Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("This court has aptly held that it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.") (internal quotations omitted); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.")(*quoting Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972)).

### 7. Class Counsel are Experienced Class Action Litigators

Class Counsel are experienced and respected class action litigators. Cottrell Decl. at ¶ 3; Brown Decl. at ¶¶ 4-7. Based on Class Counsels' knowledge and expertise in this area of law, Class Counsel believes this settlement will provide a substantial benefit to the Settlement Subclasses. Cottrell Decl. at ¶¶ 32, 33.

### 8. Defendant Would Continue to Contest Liability on All Issues

The reasonableness of the Settlement is further underscored by the fact that Defendant has legal and factual grounds available to defend this action. In fact, Defendant has taken the position all along that this case is not suitable for class treatment and that it fully complied with its obligations regarding payment of wages and provision of meal and rest breaks.

While Class Counsel is confident that while Plaintiff would succeed on liability, continued litigation would be costly, time-consuming, and not certain in outcome. Cottrell Decl. at ¶ 33. If litigation were to proceed, Plaintiff would be required to move for class certification, establish class-wide liability, and then prove up various issues regarding damages and penalties. *Id.* Such efforts would likely take many more months, if not years, and would necessitate expert witness testimony and significant additional litigation. By contrast, the Settlement herein ensures timely

26

1  relief and substantial recovery of the wages and penalties Plaintiff contends are owed to the

2  Settlement Subclasses. *Id.*

3      In addition to factual disputes, Defendant presented numerous legal defenses to the claims

4  in this litigation that, if successful, would have either reduced or eliminated recovery to Plaintiff

5  and the Class. Cottrell Decl. at ¶ 34. While Class Counsel believes Plaintiff would prevail on

6  liability and merits issues, Plaintiff is obligated to bring this information to the Court's attention

7  for evaluation of the Settlement and the attendant risks of further litigation. *Id.*

8      Above all, Defendant contends that none of Plaintiff's claims are suitable for class

9  certification because individual issues predominate. Cottrell Decl. at ¶ 34. First, Defendant

10  contends that there are significant differences in the employment experiences of individual

11  Settlement Subclass Members that militate against class treatment. *Id.* For example, Defendant

12  may argue that all wages were properly paid, and even if they were not as to each class member,

13  the circumstances are so varying that class treatment is improper. *Id.* Similarly, Defendant may

14  argue that it provided opportunities for all legally required meal and rest breaks, yet certain

15  individual Settlement Subclass Members voluntarily waived such breaks, making class treatment

16  difficult. *Id.* Further, Defendant may argue that any damages owed would be so varying among

17  Settlement Subclass Members that class treatment would be problematic. *Id.* While Plaintiff

18  disagrees with these contentions and is confident that the bulk of his claims would have been

19  successfully certified for class treatment, Plaintiff recognizes the inherent risk that this Court could

20  find a class trial to be unmanageable. *Id.* [27]

21

22  [27] *See, e.g., Hughes v. WinCo Foods*, 2012 WL 34483, 5-6 (C.D. Cal. Jan. 4, 2012) ("[T]he decision-making with
    respect to when employees may take meal and rest breaks is diverse. It varies from store to store, and from

23  department-to-department within the same store. There is simply no manner in which the timing of such breaks can be
    proven reliably with evidence of 'a single stroke.'"); *Purnell v. Sunrise Senior Living Management, Inc.*, 2012 WL

24  1951487, *4 (C.D. Cal. Feb. 27, 2012) (denying class certification pointing to defendant's presentation of "substantial
    evidence that policies for scheduling meal and rest breaks vary significantly among its facilities and by job

25  classification."); *Villa v. United Site Servs. of California, Inc.*, 2012 WL 5503550, *6 (N.D. Cal. Nov. 13, 2012)
    ("Defendant's company-wide written policies are not sufficiently specific to resolve the question of whether individual
    class members were provided valid meal breaks. Because liability cannot be established with reference to the written

26  company-wide policies alone, this question cannot be answered on a class-wide basis, and thus cannot suffice to
    satisfy the commonality requirement."); *Chaaban v. Wet Seal, Inc.* 2012 WL 1114568, *7 (Cal. Ct. App. Apr. 4,

27  2012) (trial court correctly denied certification of rest break claims where plaintiffs offered no common method of

                                                    27

28  ───────────────────────────────────────────────────────
    PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
                          APPROVAL OF CLASS ACTION SETTLEMENT
            *Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1        Plaintiff also recognizes that there was a significant risk that Defendant would have

2  disputed several merits-based issues.  Such issues include, for example, whether Settlement

3  Subclass Members consistently missed their meal and rest periods on a similar basis; and whether

4  they were properly compensated for time spent donning and doffing protective gear and

5  performing other work related activities.  Cottrell Decl. at ¶ 35.  Further, Plaintiff's Labor Code

6  Section 203 claim for waiting time penalties rises and falls with Plaintiff's other wage payment

7  claims; thus, Plaintiff would recover nothing under Section 203 if he were unable to prove the

8  underlying claims and also defeat Defendant's defense that there was a "good faith" dispute

9  regarding whether it paid all wages owed.  *See* Cal. Code Regs. Tit. 8, § 13520 (good faith dispute,

10  based in law or fact, precludes award of waiting time penalties).

11        While Plaintiff again believes that he would have prevailed on these issues and others,

12  Plaintiff recognizes the risk that a fact finder may have found for Defendant on any one or more of

13  these issues and or found damages to be significantly less than what Plaintiff claims.   Cottrell

14  Decl. at ¶ 35.

15        Defendant, represented by experienced employment lawyers, and competent, experienced

16  counsel, raised all of the above arguments, and more, in mediation and would have done so in

17  continued litigation.  Despite Plaintiff's confidence in his ability to prove his claims on a class-

18  wide basis, any one of the above defenses, if decided in favor of Defendant, could have reduced or

19  even eliminated any potential damages award.

20     **B.    PLAINTIFF CORDY'S REQUEST FOR AN ENHANCEMENT AWARD FOR HIS SERVICE TO THE CLASS IS REASONABLE**

distinguishing between instances when employees were not permitted to take breaks and instances when employees elected not to take breaks). But, see, *Dilts v. Penske Logistics*, LLC, 2010 WL 1709807 (S.D. Cal. April 26, 2010) (certifying meal and rest period claims where employer failed to pay premium owed for missed meal periods and employer used satellite data to track employee movements); *Espinoza v. Domino's Pizza*, LLC, 2009 WL 882845 (C.D. Cal. Feb. 18, 2009) (certifying class of 50-130 members when employees missed meal periods and Defendant had uniform meal break policy through-out the state); *Cervantes v. Celestica Corp.*, 253 F.R.D. at 562,573-77 (C.D. Cal. 2008) (certifying meal break class when there was direct evidence that defendant never paid a premium for missed meal periods and testimony that class members did miss meal periods when they worked); *Morton v. Valley Transport. Inc.*, 2007 WL 1113999 *4-5 (N.D. Cal. 2007) (certifying class of milk truck drivers with meal break claims finding "there are common questions, including.... whether drivers were provided meal... breaks").

28

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (*quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995). Furthermore, where time and effort form the basis for incentive awards, courts have approved different levels of compensation for class representatives based upon the evidence of their individual participation. *Hughes v. Microsoft*, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. 2001).

Here, Plaintiff Carl Cordy took the significant risk of coming forward to represent the interests of hundreds of his fellow P&M employees. Cottrell Decl. at ¶ 37; Cordy Decl. at ¶¶ 15-16.   He worked extensively with Class Counsel, produced documents relevant to the action, and prepared and sat for his deposition.   Cottrell Decl. at ¶ 37; Cordy Decl. at ¶¶ 9-12.

A substantial body of law also supports an enhancement award of this amount. *See, e.g., Ingram*, 200 F.R.D. at 694 (approving $300,000 payment to each class representative plaintiff in employment case settling before class certification); *Roberts v. Texaco*, 979 F.Supp. 185, 203-04 (S.D.N.Y. 1997) (approving incentive payments of up to $85,000 for named plaintiffs in employment case settling prior to class certification); *Van Vranken*, 901 F.Supp. at 294 (approving $50,000 service payments); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) (approving $50,000 service payments); *Yap v. Sumitomo Corp.*, 1991 WL 29112, *4 (S.D.N.Y. 1991) (approving $30,000 service payments).  As a result of Plaintiff Cordy's efforts and his willingness to step forward and assist in this litigation on behalf of all P&M employees at Defendant's Pittsburg, California facility, the Settlement Subclass Members will receive significant recoveries. Payment to Plaintiff Cordy of $8,000 is reasonable in light of the effort he put forth and the risks he took in bringing and prosecuting this action to obtain this $3,500,000 settlement.

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1    Furthermore, an enhancement award in the amount of $1,500 to Donald Jones, assuming he

2  is appointed as representative of the Itemized Wage Statement Subclass, is reasonable.[28]   Mr.

3  Jones was willing to become actively involved in this litigation as class representative to ensure

4  fair treatment to those members of this subclass.  Mr. Jones, in accepting this role, was extensively

5  interviewed to ensure his claim is typical of the members of the subclass that he represents.

6  Declaration of Donald Jones in Support of Plaintiff's Amended Motion for Preliminary Approval

7  ("Jones Decl.") at ¶ 8.    The settlement agreement and Addendum were reviewed with him, and he

8  ultimately agreed to the settlement terms.  Jones Decl. at ¶ 11.  He also participated in preparing

9  the declaration submitted herewith in support of approval of this settlement.  Jones Decl. at ¶ 11.

10  He has committed to stay involved in this matter by requesting periodic updates. Jones Decl. at ¶

11  10.  Accordingly, $1,500 is a reasonable award for his participation and assumption of

12  responsibilities in this matter.

13    **C.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE**

14    In their fee motion to be submitted with final approval papers, Class Counsel will request

15  up to thirty-three percent (33%) of the Gross Settlement Amount ($1,155,000) plus reimbursement

16  for their out-of-pocket expenses.  The typical range of acceptable attorneys' fees in the Ninth

17  Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.

18  *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v.*

19  *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; *Staton v. Boeing Co.*, 327

20  F.3d 938, 952 (9th Cir. 2003)).  However, the exact percentage varies depending on the facts of the

21  case, and in "most common fund cases, the award exceeds that benchmark."  *Id.* (citing *Knight v.*

22  *Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.

23  Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")).

24  *See also, e.g., Melendres v. City of Los Angeles*, 45 Cal. App. 3d 267, 278 (Ct. App. 1975)*; Blum*

25

26  [28] The Court has within its power the ability to replace class representatives with other class members or to increase
the number of class representatives.  *See, e.g., Doe v. Miller*, 216 F.R.D. 462, 467 (S.D. Iowa 2003).

27

28
PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

*v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000).  In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions.  *See Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.* 2011 WL 5884224, No. CV F 10–1163 LJO MJS. (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren v. RGIS Inventory Specialists,* WL 1230826, (N.D.Cal.,2011) (approving attorneys' fee award of just under 42% of common fund); *Big Lots Overtime Cases* (San Bernardino Super. Ct., JCC Proceeding No. 4283, February 4, 2004) (approving award of attorneys' fees of 33% of the recovery); *Barela v. Ralph's Grocery Company* (Los Angeles Super. Ct., No. BC070061, June 5, 1998) (same); *Davis v. The Money Store, Inc.* (Sacramento Super. Ct., No. 99AS01716, December 26, 2000) (same); *Ellmore v. Ditech Funding Corp.* (C.D. Cal., No. SAVC 01-0093, Sept. 12, 2002) (same); *Miskell v. Automobile Club of Southern California* (Orange County Super. Ct., No. 01CC09035, May 27, 2003) (same); *Sconce/Lamb Cremation Cases* (Los Angeles Super. Ct., JCC Proceeding No. 2085, March 24, 1992) (same).

In this case, given the results achieved, the effort expended litigating the case, and the difficulties attendant to litigating this case, such an upward adjustment is warranted.  There was no guarantee of compensation or reimbursement.  Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. These risks were front and center.  Moreover, in the backdrop laid *Wal-Mart v. Dukes*—a decision that does not eliminate employment class actions, but which nonetheless underscores the difficulties and uncertainties in prevailing.  Defendant's vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case.

Nevertheless, Plaintiff and Class Counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class recovery.  During the litigation, counsel had to turn away other less risky cases to remain sufficiently

1  resourced for this one.  The challenges that Class Counsel had to confront and the risks they had to

2  fully absorb on behalf of the class here are precisely the reasons for multipliers in contingency fee

3  cases.  *See, e.g.*,  *Noyes v. Kelly Servs., Inc.*, 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D.

4  Cal. Aug. 4, 2008)(quoting *Ketchum,* 24 Cal.4th at 1132-33); Posner, Economic Analysis of the

5  Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal

6  services paid as they are performed… because the risk of default (the loss of the case, which

7  cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

8       Attorneys who litigate on a wholly or partially contingent basis expect to receive

9  significantly higher effective hourly rates in cases where compensation is contingent on success,

10  particularly in hard-fought cases where, like in the case at bar, the result is uncertain.  This does

11  not result in any windfall or undue bonus.   In the legal marketplace, a lawyer who assumes a

12  significant financial risk on behalf of a client rightfully expects that his or her compensation will

13  be significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly

14  basis), and that the greater the risk, the greater the "enhancement."  Adjusting court-awarded fees

15  upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for

16  hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace,

17  and in so doing, helps to ensure that meritorious cases will be brought to enforce important public

18  interest policies and that clients who have meritorious claims will be better able to obtain qualified

19  counsel.

20       The requested attorneys' fees and expense award is also reasonable when compared to

21  Class Counsel's lodestar amount.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050-51

22  (9th Cir. 2002)("Calculation of the lodestar, which measures the lawyers' investment of time in the

23  litigation, provides a check on the reasonableness of the percentage award"). [29]  Here, BROWN |

24

25  [29] As with the percentage method, "a court can adjust the lodestar upward or downward based on certain factors."
    *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  Increasing the lodestar is done by

26  the inclusion of a "multiplier."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).  The *Vizcaino* Court
    found that 83 percent of courts in the common fund cases it surveyed assessed a multiplier to class counsel's lodestar

27  of between 1.0 and 4.0.  *Id.* at 1051, n. 6.  As the Ninth Circuit has stated, "courts have routinely enhanced the lodestar
    32

1  POORE LLP's current lodestar is $304,225 and Schneider Wallace Cottrell Konecky LLP's

2  lodestar is $666,432.  *See* **Exhibit 1** to Cottrell Decl. and **Exhibit 1** to Brown Decl. for a summary

3  of each firm's lodestar to date, including the number of hours billed and each biller's hourly rate.

4  Thus, Class Counsel's cumulative lodestar to date is $970,657.  This amount will increase to for

5  preparation of the final approval papers, preparation and attendance at any remaining hearings,

6  correspondence with Settlement Subclass Members, and settlement administration and oversight.

7  Class Counsel incurred these fees performing the work described herein and in the accompanying

8  declarations of Class Counsel.  Cottrell Decl. at ¶¶7-9; 39; Brown Decl at ¶ 9.  Class Counsel's

9  litigation costs to date total $53,455.   Cottrell Decl. at ¶ 40; Brown Decl at ¶ 12.  Class Counsel

10  also requests reimbursement for these expenses.

11     Class Counsel respectfully submits that a one-third recovery for fees is modest and

12  appropriate and should be preliminarily approved as fair and reasonable.[30]

13  **VI.   PROVISIONAL CERTIFICATION OF THE SETTLEMENT SUBCLASSES IS
14        APPROPRIATE**

15     Pursuant to FRCP 23(c)(1), the Court may "make a conditional determination of whether

16  an action should be maintained as a class action, subject to final approval at later date." *Fry v.*

17  *Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D.Pa. 2000) (*citing* FRCP 23(c)(1)). Conditional

18  certification of the class is appropriate where the plaintiff demonstrates numerosity, commonality,

19  typicality and adequacy of representation, and one of the three requirements of FRCP 23(b) is met.

20  *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Plaintiff submits

21  that all of the requirements of Rule 23(a) as well as those of Rule 23(b)(3) are met in this case for

22  purposes of settlement. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

23     **A.   CLASS CERTIFICATION IS PROPER UNDER FRCP 23(A)**

24

---

25  to reflect the risk of non-payment in common fund cases." *Id.* at 1051 (quoting *In re Washington Public Power*
   *Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994)).

26
   [30] While Class Counsel will address these issues in detail in their later fee motion, their collective lodestar, which is
27  nearly $1,000,000, reflects the magnitude of work performed on this case.

33

28

1.     **The Size of the Subclasses are So Numerous that Joinder is Impracticable**

To meet the numerosity requirement of FRCP 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467.   There is no set number that determines numerosity.  *See Welling v. Allexy,* 155 F.R.D. 654, 656 (N.D. Cal. 1994) (noting that courts have certified classes as small as 14 and often certified classes with 50-60 members).  The numerosity requirement is met based on the following numbers of members of the Settlement Subclasses which have been identified through Defendant's payroll records.  According to Defendant, there are 699 members of the Unpaid Time Subclass, 122 members of the Continual Presence Subclass, 170 members of the Waiting Time Penalty Subclass, and 638 members of the Itemized Wage Statement Penalty Subclass.  Ortman Decl. at ¶ 7.

2.     **Commonality and Predominance**

The commonality requirement of FRCP 23(a)(2) "is met if there is at least one common question or law or fact." *Fry*, 198 F.R.D. at 467. As the Ninth Circuit held in *Hanlon*: Rule 23(a)(2) has been construed permissively. Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution… a single common question" satisfies commonality.  *Wang v. Chinese Daily News*, --F.3d--2013 WL 4712728 (C.A.9 (Cal)(citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011).  Furthermore, the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.  *Hanlon*, 150 F.3d at 1019. Additionally, Rule 23(b)(3) requires Plaintiff to demonstrate that these common questions predominate over questions that affect only individual putative subclass members.

"When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability."  *Kamar v. Radio Shack Corp.* 2008 WL 4552953 *10 (C.D. Cal. October 8, 2008).  Thus, where the employer has a uniform policy that is uniformly applied, the appropriateness of class certification is "easily established." *Id.*

Although denied by defendant, according to Plaintiff, common questions of law and fact predominate thereby satisfying sections (a)(2) and (b)(3) of Rule 23 based on Defendant's policies and practices relating to the six minute rule, meal and rest breaks for continual presence employees, compliant itemized wage statements and payment of all wages owed at the time one's employment ends.

### a)    Facts common to all P&M employees

As a primary matter, facts common to all P&M employees from 2008 through the present, regardless of subclass, include the following:

- They all work at the same facility in Pittsburg, California (Deposition of William Swenson Vol. I ("Swenson Dep. I") at 99:3-99:12) (Attached as **Exhibit 3** to Cottrell Decl.);

- They all are subject to the same terms and conditions of employment as dictated by the same collective bargaining agreement (Swenson Dep. I at 24:10-24:13);

- They all are subject to the same uniform payroll, timekeeping and compensation policies (Swenson Dep. I at 99:3-99:23);

- They all are required to wear basic personal protective equipment, including a hardhat, safety glasses, ear plugs, long-sleeved shirts and steel-toed boots (Ripoli Dep. at 118:13-120:13); and

- They all are subject to uniform safety policies (Ripoli Dep. at 123;12-124:19).

### b)    Work Performed Off The Clock and For Which Employees Are Not Compensated

Under California Labor Code Sections 204 and 1194, an employer is required to pay employees for all time worked.  The basis for Plaintiff's first cause of action for failure to pay for all time worked, consists of Defendant's common policy of requiring the hourly P&M employees

35

1  to swipe in at least six minutes prior to their shift start times and swipe out at least six minutes

2  after their shift end times.[31]  Complaint, Doc No. 1; Declaration of Carl Cordy in Support of

3  Plaintiff's Amended Motion for Preliminary Approval ("Cordy Decl.") at ¶ 6; Ripoli Dep. 27:7-

4  27:13; 27:19-28:7; 29:19-30:9.  Plaintiff also alleges that some of the activities the employees

5  perform in advance of, and after their shifts, include donning, doffing and stowing their personal

6  protective equipment and walking to and from their work stations.[32]  Cordy Decl. at ¶ 6.  These

7  common practices result in the denial of pay for P&M employees for this time that they are subject

8  to Defendant's control and performing work related tasks.[33]

9         For the Unpaid Time Subclass which is predicated on Plaintiff's first cause of action, the

10  common issues impacting all subclass members are whether Defendant requires the P&M

11  employees to be at the facility outside of their scheduled shifts and whether Defendant fails to pay

12  them for this time.  Another common issue is whether Defendant has a common policy of requiring

13  the employees to perform work activities outside of their scheduled shifts such as donning and

14  doffing personal protective equipment, walking and waiting, for which they are not compensated.

15  Common questions that arise from these common policies includes, for example, whether

16  Defendant requires the employees to arrive before their shift starts and stay after their shift ends;

17  whether Defendant suffers and permits the employees to work outside of their scheduled shifts;

18

---

19  [31]  Defendant denies that there is any such policy.

20  [32]  Again, Defendant denies these allegations.

21  [33]  The FLSA broadly defines "hours worked" to include all hours employees work, including *"(w)ork not requested

22  but suffered or permitted"* by an employer.  29 USC § 203(g) (emphasis added); 29 C.F.R. § 788.223; *Forrester v. Roth's I.G.A. Foodliner, Inc.* (9th Cir. 1981) 646 F.2d 413, 414 (an employer who knows or should have known of

23  hours worked by an employee must comply with overtime compensation requirements).  Under Code of Federal Regulation § 778.223, the following time is included:  (a)  All time during which an employee is required to be on duty

24  or to be *on the employer's premises or at a prescribed workplace* and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so.  Thus, working time is not limited to the hours

25  spent in active productive labor, but includes time given by the employee to the employer *even though part of the time may be spent in idleness*.  (emphasis added).  Similarly, in California, the IWC Wage Orders broadly define

26  "hours worked" to include "the time during which an employee is subject to the control of the employer, and includes all the time the employee is *suffered or permitted to work,* whether or not required to do so."  8 Cal.C. Regs. § 11010

27  et seq. ¶ 2 (emphasis added); *see Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal. App. 4th 1524, 1534-1535 (whether limo drivers' "on call" time should be included in "hours worked" for overtime pay).

36

28  PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1   and whether Defendant compensates the employees for time worked outside of their scheduled

2   shifts.   Common questions also include whether Defendant failed to compensate the subclass

3   members for all the work they required, encouraged or permitted class members to perform;

4   whether Defendant failed to compensate class members for work performed in excess of 40 hours

5   per workweek with overtime premium wages; and whether Defendants engaged in a pattern,

6   practice, or policy encouraging class members to work "off the clock" and/or failing to pay class

7   members for hours worked in excess of 40 hours per workweek.

8          Certification is also appropriate since the issues central to this claim can be resolved

9   through common proof.   At least one manager, Safety Director Fred Ripoli, has acknowledged

10  Defendant has a policy and practice of requiring all P&M employees to swipe in at least six

11  minutes before their scheduled shift begins, and prohibits employees from swiping out less than six

12  minutes after their scheduled shift ends.   Ripoli Dep. 27:7-27:13; 27:19-28:7; 29:19-30:9.   Ripoli

13  also acknowledged that Defendant has a uniform policy and practice of only paying the P&M

14  employees for their scheduled shifts.   Ripoli Dep. 16:3-16:16.   Ripoli's testimony is consistent

15  with the testimony of numerous P&M employees, including Plaintiff Cordy, who confirm the six

16  minute rule and the unpaid time.   Cordy Decl. at ¶ 6.   There is also testimony that Defendant

17  requires the employees to don and doff personal protective equipment and walk varied distances to

18  and from their work stations outside of their scheduled shifts.   Ripoli Dep. at 129:16-130:25.

19                    c)        **Denial of Meal and Rest Periods for Continual Presence Workers**

20         Pursuant to California Labor Code §§ 226.7 and 512, Defendant is required to provide,

21  authorize, permit, and/or make available meal and rest periods to its hourly nonexempt employees.

22  Meal periods must be at least thirty minutes and the employees must be completely relieved of all

23  duties.   Similarly, Defendant is required to provide, authorize, permit, and/or make available to

24  employees ten minutes of net rest time per four hours or major fraction thereof of work, and to pay

25  employees during those rest periods.   Unless the employee is relieved of all duty during the thirty-

26  minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal

27

28

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1   and/or rest period is counted as time worked.  For those employees labeled "continual presence

2   employees", the nature of their job (monitoring the production areas and equipment) requires that

3   they sometimes have "on duty" meal and rest periods.  Ripoli Dep. at 20:14-21:9.  Until recently,

4   Defendant did not compensate them with premium pay to account for their missed breaks.

5   Swenson Dep. II at 295:15-296:6.

6          The first pertinent question, which is common to all members of the Continual Presence

7   Subclass, is whether, through its standardized operating procedures, Defendant required continual

8   presence employees to remain on-duty during their meal and rest breaks.  The second critical

9   question, also common to all members of this subclass is whether Defendant paid one hour of

10  premium pay for missed breaks.   An assessment of these common questions will determine

11  Plaintiff's and the members of this subclass' claims regarding meal and rest periods and should be

12  decided on a class basis.

13         Defendant admits that it had a facility wide policy of not compensating the hourly P&M

14  employees one hour of premium pay for each missed meal period from the start of the class period

15  until June 2011.  Swenson Dep. II at 294:15-295:6.  It also admits that continual presence

16  employees throughout the facility sometimes miss breaks due to the nature of their job duties.

17  Ripoli Dep. at 20:14-21:9.

18              **d)    Statutorily Compliant Wage Statements**

19         The common issue affecting all members of the Itemized Wage Statement Subclass is that

20  Defendant uniformly failed to provide the P&M employees with accurate itemized wage

21  statements, in direct violation of California Labor Code § 226.[34]  Defendant acknowledged that,

22

23  _____

24  [34] Section 226(a) requires employers to "provide accurate itemized statements of wages to their employees."
    *McKenzie v. Federal Exp. Corp.*, 765 F.Supp.2d 1222, 1227-28 (N.D. Cal. 2011) (quoting *Morgan v. United Retail,*

25  *Inc.*, 186 Cal.App.4th 1136, 113 Cal.Rptr.3d 10, 14 (Ct. App. 2010)).  To comply with § 226(a), Defendant's wage
    statements must be provided to Plaintiff and the Class either semi-monthly or at the time of each payment of wages

26  and must include, *inter alia*, **all applicable hourly rates in effect during the pay period and the corresponding**
    **number of hours worked at each hourly rate by the employee** …Cal. Labor Code § 226(a)(emphasis added).

27

28

until recently, the wage statements that it provides to all P&M employees did not meet the standards established in the Labor Code.  Specifically, Mariane Smith, Defendant's Department Manager of Human Resources, affirmed that, at least until recently, Defendant did not include a breakdown of the hours worked at each hourly rate, and overtime rate, on the wage statements. Deposition of Mariane Smith ("Smith Dep.") at 94:5-15; 96:5-96:10; 97:2-97:10 (Attached as **Exhibit 5** to Cottrell Decl.).  Defendant's admissions indicate that the Itemized Wage Statement Subclass Members did not receive compliant wage statements.  Plaintiff's claim under Section 226 therefore raises a common question that can be answered through common proof.  Common questions that will predominate over any individualized assessment of subclass members include whether the wage statements issued by Defendant includes a breakdown of hours worked and rates of pay, both regular and overtime.

### e)  Failure to Pay on Termination or Quit

Labor Code §§201-203 require an employer to pay all wages owed to an employee who has been discharged or who has quit.  If the employer fails to pay an employee all wages owed within the statutorily required time period, §203 calls for a penalty on the employer equal to one day's rate of pay for each day the employer fails to pay, for a time period not to exceed 30 days. Defendant's liability for waiting-time penalties under Labor Code §203 flow directly from the violations established above.   As a result of Defendant's policies and practices of failing to compensate hourly employees for all hours worked and failing to provide bona fide meal and rest periods, Defendants have failed to pay the Plaintiff and the Class all wages owed to them upon termination or quit in violation of California Labor Code §§ 201-202.  Liability for this claim rises and falls according to the predicate unpaid time worked claim and the meal and rest period claim.

A determination of whether Defendant is liable for waiting-time penalties will be based on the same universal policies and standardized procedures discussed above, which are applicable to members of the Unpaid Time Subclass and the Continual Presence Subclass.  Whether Defendant's unpaid time worked and break period policies and procedures prevented employees

1   who left their employment from receiving all wages owed to them within the statutory period

2   raises common questions of law and fact.  Whether Defendant's failure to pay the Waiting Time

3   Penalty Subclass Members all wages owed to them was willful within the meaning of the statute

4   raises additional questions of law and fact common to the proposed Subclass as a whole.  Common

5   questions like these will predominate over any individualized assessment of individual subclass

6   members.  As such, Plaintiff's and subclass members' claims for waiting-time penalties should be

7   decided on a class basis.

8               **f)      Plaintiff's Claims are Typical of Those of the Class**

9        "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the

10  members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a

11  representatives' claims are 'typical' if they are reasonably coextensive with those of absent class

12  members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. To satisfy the

13  requirement of typicality, "a class representative must be part of the class and possess the same

14  interest and suffer the same injury as the class members." *General Tel. Co. of S.W. v. Falcon*, 457

15  U.S. 147, 156 (1982).

16      Plaintiff Cordy's claims are sufficiently typical of the common claims presented.  During

17  the class period, Plaintiff was a non-exempt, hourly P&M employee at Defendant's Pittsburg,

18  California facility.  Plaintiff Cordy claims that he was denied compensation for all of the hours that

19  he worked.  He also claims that, as a continual presence employee, he was denied meal and rest

20  periods and was not paid premium pay.  Cordy Decl. at ¶ 7.  Plaintiff alleges that he and other

21  P&M employees were required to swipe in at least six minutes prior to their scheduled shift and

22  that they were required to don personal protective equipment in advance of their scheduled shifts.

23  Cordy Decl. at ¶ 6.  Plaintiff Cordy was not paid for this time.  Cordy Decl. at ¶ 6.  Plaintiff

24

25

26

27

28

40

1   Cordy's last day of work was in October 2010, and he retired in October 2011.   He alleges that he

2   was not paid all compensation owed to him at the time of his departure.  Cordy Decl. at ¶ 8.[35]

3       Donald Jones worked as a non-exempt hourly P&M employee for Defendant from 1991

4   through the present.  Jones Decl. at ¶ 3.  During that time period, he received itemized wage

5   statements at the end of every payroll period.  Jones Decl. at ¶ 5.   His wage statements, as with

6   the other members of the Itemized Wage Statement Subclass, did not contain a breakdown of hours

7   worked and rates of pay, both regular and overtime.  Jones Decl. at ¶ 5.     Plaintiff and Donald

8   Jones contend that Defendant's treatment of the proposed Settlement Subclass Members was

9   uniform with respect to these issues.  Jones Decl. at ¶¶ 5, 6; Cordy Decl. at ¶¶7, 9.  Defendant's

10  uniform treatment demonstrates that the proposed Settlement Subclass Members possess similar

11  interests and suffered similar injuries.  Class Counsels' interviews of dozens of class members

12  confirmed this view.   Cottrell Decl. at ¶ 9.  A class action adjudicating all of these claims is

13  clearly superior to individual adjudication of each Settlement Subclass Member's claims, which

14  would require numerous separate trials and could lead to contradictory results.

15      For purposes of preliminary approval of the parties' settlement - because the claims of the

16  named Plaintiff, Donald Jones and the Settlement Subclass members all arise from the same

17  alleged practices, policies, events and courses of conduct, and are all based on the same facts and

18  legal theories - the typicality requirement is also satisfied.

19          **g)      Plaintiff, Mr. Jones and Class Counsel are Adequate Representatives of the Class**

20      To meet the adequacy of representation requirement in FRCP 23(a)(4), Plaintiff must show

21  "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the

22  class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict

23  between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469;

24  *see also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

25

26  ───────────────

    [35] Since Plaintiff Cordy last performed work for Defendant in October 2010, he is not a member of the Itemized Wage

27  Statement Subclass.  Accordingly, Class Counsel requests that this Court appoint Donald Jones as representative of
    this subclass.

28  PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
    APPROVAL OF CLASS ACTION SETTLEMENT
    *Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1    The adequacy of representation requirement is met here because the named Plaintiff and

2    Donald Jones have the same interests as the Settlement Subclass Members. Cottrell Decl. at ¶¶ 37,

3    38  There is no conflict between Plaintiff, Mr. Jones and the Settlement Subclasses in this case;

4    Their claims are in line with the claims of the members of the subclasses.  Cordy Decl. at ¶ 9;

5    Jones Decl. at ¶ 6.

6    Plaintiff has and, accompanied by Mr. Jones, will continue to aggressively and competently

7    assert the interests of the Settlement Subclasses that they are appointed to represent.  Class

8    Counsel is skilled and experienced in wage and hour class action litigation. Cottrell Decl. at ¶ 3.

9    Plaintiff submits that class treatment of these claims is appropriate where, as here, the legality of a

10   policy or practice as a whole is at issue.

11   Thus, the Settlement Subclasses for which Plaintiff seeks provisional certification meets all

12   of the requirements of FRCP 23(a): they are numerous, common questions predominate, Plaintiffs,

13   and Mr. Jones's claims are typical of the claims of the members of the subclasses, and Plaintiff,

14   Mr. Jones and Class Counsel are adequate class representatives.

15   **B.      CLASS CERTIFICATION IS PROPER UNDER FRCP 23(B)(3)[36]**

16   In addition to demonstrating the four prerequisites of FRCP 23(a), class certification

17   requires a showing that certification is proper under one of the three requirements of FRCP 23(b).

18   Under FRCP 23(b)(3), class certification is appropriate if "the court finds that the questions of law

19   or fact common to the members of the class predominate over any questions affecting only

20   individual members, and that a class action is superior to other available methods for the fair and

21   efficient adjudication of the controversy."

22

23

---

24   [36] The Itemized Wage Statement Penalty Subclass may also be certified under Rule 23(b)(2), because Defendant has
     allegedly "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or
25   corresponding declaratory relief is appropriate respecting the class as a whole."  "[T]his requirement is almost
     automatically satisfied in actions primarily seeking injunctive relief," particularly where, as here, the relief sought by
26   the representative plaintiffs will benefit the entire class.  *Baby Neal v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994).  The
     Ninth Circuit has held that certification under Rule 23(b)(2) is appropriate where, as here, the plaintiffs seek
     meaningful declaratory and injunctive relief.  *Molski v. Gleich*, 318 F.3d 949-50 (9th Cir. 2003).

28

1   The Ninth Circuit has repeatedly held that "When common questions present a significant

2   aspect of the case and they can be resolved for all members of the class in a single adjudication,

3   there is clear justification for handling the dispute on a representative rather than on an individual

4   basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244

5   F.3d 1152, 1162 (9th Cir. 2001) (quoting *Hanlon*, 150 F.3d at 1022).  The question posed by the

6   predominance inquiry is whether the "proposed classes are sufficiently cohesive to warrant

7   adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "The

8   common questions need not be dispositive of the entire action.  In other words, 'predominate'

9   should not be automatically equated with 'determinative.'  Therefore, when one or more of the

10  central issues in the action are common to the class and can be said to predominate, the action may

11  be considered proper under Rule 23(b)(3) even though other important matters will have to be tried

12  separately, such as damages or some affirmative defenses peculiar to some individual class

13  members."  7AA Wright, Miller & Kane, Federal Practice & Procedure Civ. 3d § 1778 (2008).

14  Indeed, the very use of the word "predominate" contemplates that individual issues will also be

15  present.

16  In addition, it is well-settled that predominance does not require that the claims of all the

17  class members be identical.  *See, e.g.*, *In re Wells Fargo Home Mortgage Overtime Pay Litigation*,

18  2007 WL 3045994, at *8 (N.D. Cal. Oct. 18, 2007) ("To establish predominance of common

19  issues, a party seeking class certification is not required to show that the legal and factual issues

20  raised by the claims of each class member are identical.").  Differences in how damages are

21  calculated does not defeat predominance.  Fed. R. Civ. P. 23, Advisory Comm. Notes, 1966

22  amendments ("the need, if liability is found, for separate determination of the damages suffered by

23  individuals within the class" does not defeat predominance); *Local Joint Executive Bd. Of*

24  *Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (9th Cir. 2001) ("potential difficulty in proof"

25  regarding damages does not defeat predominance).

26

27

28

1    Here, common factual and legal questions predominate over any other questions.  As

2    discussed above, Plaintiff's claims present numerous common questions of law and fact, many of

3    which go to the elements of Plaintiff's legal claims.  Common questions of law that are central to

4    determining the outcome of this litigation include, among others, whether the alleged required

5    presence at the facility outside of scheduled shift times is compensable as time worked under state

6    law, whether the donning, doffing, and walking time alleged is compensable as time worked under

7    state law, whether Defendant's  itemized wage statements for its employees did not comply with

8    state law requirements, whether Defendant has paid the members of certain of the subclasses for all

9    straight time and overtime worked, whether Defendant failed to pay premium pay to continual

10   presence employees for missed breaks in violation of state law, and whether Defendant's policies

11   and procedures regarding wage and hour compliance and monitoring (particularly in the areas of

12   off-the-clock and meal and rest breaks) work, are sufficient.  Numerous courts have recognized

13   that these common questions are sufficient to meet the predominance standard, and thus support

14   class certification pursuant to Rule 23(b)(3). *See* e.g. *Kurihara v. Best Buy Co., Inc.*, 2007 WL

15   2501698, at * 7-8 (N.D. Cal. Aug. 30, 2007); *Berger v. Cleveland Clinic Found.*, 2007 WL

16   2902907, at *22, 25 (N.D. Ohio Sept. 29, 2007);  *Whiteway v. FedEx Kinko's Office and Print*

17   *Services*, 2006 WL 2642528, at *5 (N.D. Cal. Sept. 14, 2006) (whether defendant violated

18   California wage and hour law by failing to consistently provide meal periods raises a common

19   question of law);

20   In summary, there are numerous important common questions of law and fact.  Because of

21   the number of these questions, and because the answer to so many of them will go directly to

22   determining liability to the class, the predominance requirement is easily met.[37]

23   Moreover, Plaintiff contends that allowing Settlement Subclass Members the opportunity to

24   participate in a class settlement that yields an immediate and substantial benefit is highly superior

25

---

26   [37]  While Defendant does not oppose this motion and has agreed to resolve this matter, if this case had proceeded to a
27   class certification motion, Defendant would have rigorously contested commonality, which further justifies Plaintiff's
     resolution here.

44

28   PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
     APPROVAL OF CLASS ACTION SETTLEMENT
     *Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1    to having a multiplicity of individual and duplicative proceedings in this and other courts. It is also

2    superior to the alternative of leaving these important labor rights without redress due to the

3    difficulty of finding legal representation and filing claims on an individual basis.

4         For the foregoing reasons, this Court should provisionally certify the proposed Settlement

5    Subclasses.

6    **VII.   THE PROPOSED NOTICE PROVIDES ADEQUATE NOTICE TO THE CLASS
         AND SUFFICIENT DUE PROCESS**
7

8         "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

9    *Hanlon*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it 'generally describes

10   the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

11   and to come forward and be heard.' *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575

12   (9th Cir. 2004) (*quoting Mendoza v. U.S.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

13        Here, the Class Notice and manner of distribution negotiated and agreed upon by the

14   parties is "the best notice practicable," as required under FRCP 23(c)(2)(B). All Settlement

15   Subclass Members have been identified and the Class Notice will be mailed directly to each

16   Settlement Subclass Member. *See* **Exhibit A** at ¶11(B). The proposed Class Notice (*see* **Exhibit**

17   **C**) is clear and straightforward, and provides information on the meaning and nature of the

18   proposed Settlement Subclasses and class action, the terms and provisions of the Settlement

19   Agreement, and the monetary awards that the Settlement will provide Settlement Subclass

20   Members.

21        The proposed Class Notice also fulfills the requirement of neutrality in class notices. *See*

22   CONTE & NEWBERG at § 8.39. It summarizes the proceedings necessary to provide context for

23   the Settlement Agreement and summarizes the terms and conditions of the settlement, including an

24   explanation of how the settlement amount will be allocated between the named Plaintiff, Donald

25   Jones, Class Counsel, the Claims Administrator, and the Settlement Subclass Members, in an

26   informative, coherent and easy-to-understand manner, all in compliance with the Manual for

27

28

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

1  Complex Litigation's recommendation that "the notice contain a clear, accurate description of the

2  terms of the settlement."  MANUAL FOR COMPLEX LITIG. at § 21.312.

3        The Notice clearly explains the procedures and deadlines for requesting exclusion from the

4  settlement, objecting to the estimated award, the consequences of taking or foregoing the various

5  options available to Settlement Subclass Members, and the date, time and place of the final

6  settlement approval hearing.  Pursuant to FRCP 23(h), the proposed Class Notice also sets forth the

7  amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the procedure

8  by which Class Counsel will apply for them. In addition, the Class Notice explains that Settlement

9  Subclass Members have the opportunity to object to Class Counsel's Motion for Attorneys' Fees

10  and Costs. The Class Notice clearly states that the settlement does not constitute an admission of

11  liability by Defendant.  It makes clear that the final settlement approval decision has yet to be

12  made.

13        Accordingly, the Class Notice complies with the standards of fairness, completeness, and

14  neutrality required of a settlement class notice disseminated under authority of the Court. CONTE

15  & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIG. at § 21.311 and 21.312.

16        Furthermore, reasonable steps will be taken to ensure that all Settlement Subclass Members

17  receive the Class Notice. Before mailing the Class Notice the Claims Administrator will: (1)

18  receive the last-known addresses, telephone numbers, and social security numbers of the

19  Settlement Subclass Members; (2) run this class list through the United States Postal Service's

20  National Change of Address database ("NCOA"). The NCOA database documents change-of-

21  address requests filed with the post office and can cover up to a four-year period; and (3) perform

22  address searches using public and proprietary electronic resources which collect their data from

23  various sources such as utility records, property tax records, motor vehicle registration records

24  (where allowed) and credit bureaus. *See* **Exhibit A** at ¶14(A). The Claims Administrator will use

25  reasonable efforts, including calling Settlement Subclass Members if telephone numbers are

26

27

28

PLAINTIFF'S AMENDED NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
*Cordy, et al. v. USS-POSCO Industries, et al.*, Case No. 3:12-cv-00553-JST

available, to obtain updated addresses for those Settlement Subclass Members for whom the Class Notice is returned as undelivered. *Id.*

Because the proposed Class Notice clearly and concisely describes the terms of the settlement and the obligations of Settlement Subclass Members who participate, and because the Class Notice will be disseminated in a way calculated to provide notice to as many Settlement Subclass Members as possible, the Class Notice and notice procedures should be preliminarily approved.

## VIII. <u>THE PROPOSED SCHEDULING ORDER</u>

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement.  The proposed schedule, which Plaintiff respectfully requests this Court to approve, is as follows:

| | |
|---|---|
| Defendant to deposit $19,621 into a Qualified Settlement Fund maintained by the Claims Administrator | Within 5 business days after the Court's preliminary approval of the Settlement Agreement |
| Defendant shall provide to the Claims Administrator and Class Counsel a database containing Settlement Subclass Members' contact information | 15 days after the Court's preliminary approval of the Settlement Agreement |
| Claims Administrator shall mail Class Notice to Settlement Subclass Members | 20 days after the Claims Administrator receives Defendant's database |
| Deadline to postmark requests for exclusion from or objections to the Settlement | 45 days after Class Notice is mailed |
| Defendant to deposit $3,480,379 into the Qualified Settlement Fund maintained by the Claims Administrator (including the prior deposit, the fund will have $3,500,000 in it) | On the date of final approval of the Settlement Agreement |
| Effective Date | The date the Court finally approves the Settlement Agreement (TBD) |
| Payment of Class Counsels' attorneys' fees and costs | Within 1 day of the Effective Date |
| $25,000 paid to the LWDA | Within 10 business days of the Effective Date |
| Payment of Settlement Subclass Members' Settlement Award | Within 10 business days of the Effective Date |
| Payment of $8,000 enhancement award to Named Plaintiff Carl Cordy and $1,500 to Class Representative Donald Jones | Within 1 day of the Effective Date |

47

| Uncashed/undeposited checks shall be paid to *cy pres* recipient | 180 days after settlement checks are mailed |
|---|---|
| Defendant shall confirm it is maintaining records of the actual hours worked by P&M employees, and will continue to maintain those records for at least three years.  Defendant shall confirm that all P&M employee wage statements contain all information required under California law. | 180 days after the Court's final approval of the Settlement Agreement |

## IX.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the Motion for Preliminary Approval.

Dated: October 8, 2013                              Respectfully submitted,


                                                     /s/ *Carolyn H. Cottrell*
                                                    Carolyn H. Cottrell
                                                    SCHNEIDER WALLACE
                                                    COTTRELL KONECKY LLP
                                                    180 Montgomery Street, Suite 2000
                                                    San Francisco, California  94104
                                                    Tel:  (415) 421-7100
                                                    ccottrell@schneiderwallace.com

                                                    Scott A. Brown
                                                    BROWN | POORE LLP
                                                    1350 Treat Boulevard, Suite 400
                                                    Walnut Creek, California 94597
                                                    Telephone: (925) 943-1166
                                                    sbrown@bplegalgroup.com


                                                    *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2013, I electronically filed the above document with the

Clerk of the Court using the CM/ECF system, which sent notification of such filing to the

following:

Todd M. Schneider

Carolyn Hunt Cottrell

Cassandra H. Carroll

Francis J. Ortman

Scott A. Brown

        _/s/ Carolyn H. Cottrell_____
Carolyn H. Cottrell (SBN 166977)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
ccottrell@schneiderwallace.com

Attorney for Plaintiff and the Settlement Subclasses